MICHAEL L. RHYMES, Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 42010

March 24, 2005 107 P.3d 1278

---

[1]*Truckee-Carson Irr. Dist. v. Wyatt,* 84 Nev. 662, 666, 448 P.2d 46, 49 (1968).

[2]*Id.* at 667, 448 P.2d at 50.

[3]*Driscoll v. Erreguible,* 87 Nev. 97, 101, 482 P.2d 291, 294 (1971).

*Stanley A. Walton,* Las Vegas, for Appellant.

*Brian Sandoval,* Attorney General, Carson City; *David J. Roger,* District Attorney, and *James Tufteland,* Chief Deputy District Attorney, Clark County, for Respondent.

Before ROSE, GIBBONS and HARDESTY, JJ.

# OPINION

*Per Curiam:*

## SUMMARY

Appellant Michael Rhymes appeals from his judgment of conviction. Rhymes contends that the district court erred in allowing the State to introduce evidence of prior bad acts and by failing to give a proper limiting instruction to the jury when the district court admitted the evidence in accord with this court's holding in *Tavares v. State.*[1]

We conclude that the district court properly admitted the prior bad acts evidence. We also conclude that the district court erred by failing to give an appropriate limiting instruction at the time the district court admitted the uncharged bad acts evidence. We hold that when evidence of prior bad acts concerns acts uncharged in the instant proceeding, instructions must be given both at the time the evidence is admitted and again when the jury is charged. We reiterate that the State bears the burden of requesting such an instruction. Nevertheless, under the circumstances of this case, we conclude that the failure to give such an instruction constituted harmless error.

## FACTS

Appellant, Michael Rhymes, lived with Irene Vela, her daughter and her three sons. On the evening of December 7, 2001, Vela's daughter invited a friend, the victim, age 12, over to spend the night. After watching movies, the two girls fell asleep on the living room floor while one of Vela's sons slept on the couch next to the two girls.

Later that evening, the victim was awakened when she felt her pajama bottoms being pulled down. Rhymes was lying on the

---

[1]117 Nev. 725, 30 P.3d 1128 (2001).

floor next to her, propped up on one elbow. Rhymes immediately threw the covers back onto the victim. Rhymes continued to massage the victim's leg, around her knee and thigh, and told her that he had taken massage classes and was going to get a job as a masseur. The victim told Rhymes to stop and told him that she had to return to her apartment to get some medicine. After waking her friend, the two girls went to the victim's apartment and tried to get inside but were unsuccessful. The victim told her friend what had occurred between herself and Rhymes, and the two girls returned to Vela's home but did not go back to sleep until Rhymes and Vela left for work the next morning.

After returning home, the victim told her mother about the incident, and her mother called the police. The police interviewed the two girls, who corroborated each other's stories. The police administered a sexual assault exam on the victim, the results of which were negative. The police also interviewed Rhymes, who denied touching the victim.

As a result of these events, Rhymes was charged on February 14, 2002, with one count of lewdness with a child under the age of fourteen. Prior to trial the State filed a motion to admit evidence of other bad acts uncharged in the present indictment. The State averred that these acts were admissible to show intent and the absence of mistake.

To establish Rhyme's prior bad acts, the State called two witnesses who had previously filed complaints against Rhymes for sexual misconduct. Both women received massages from Rhymes in 2000 while he was a student at the Dahan Institute of Massage. Both women alleged that Rhymes engaged in sexual misconduct during the course of their massages. One of the women testified that during her massage Rhymes exposed her breast and partially inserted one finger into her vagina after slipping his finger through the side of her panties. The second witness testified that during her massage Rhymes uncovered her breast multiple times, whispered things in her ear, touched her pubic hairs, and reached under her underwear and started rubbing her clitoris. In a separate case, the State charged Rhymes with sexual misconduct for his conduct involving these two women.

The district court admitted this evidence. The district court agreed with the State's argument that it was relevant to establish Rhymes' intent and that there was a similarity between the prior bad acts and the acts alleged in the instant case. Additionally, the district court agreed that the evidence was more probative than prejudicial. The district court failed, however, to determine whether the case had been proved by clear and convincing evidence. Importantly, the district court also failed to give the re-

quired limiting instruction when this evidence was admitted at trial. The district court did, however, provide such an instruction when the jury was charged.

The jury ultimately convicted Rhymes of lewdness with a minor under the age of fourteen, and he was sentenced to life imprisonment with parole eligibility after a minimum of ten years. Rhymes appeals, claiming that the district court erred by: (1) failing to conduct a hearing, pursuant to the requirements of *Petrocelli v. State*,[2] to determine the admissibility of the prior bad acts evidence; and (2) failing to give a limiting instruction regarding the limited use of prior bad acts testimony at the time the evidence was admitted at trial.

## DISCUSSION

### The failure to hold a Petrocelli hearing

Rhymes contends that the district court never conducted a hearing to determine the admissibility of the prior bad acts evidence and that in any event the prior bad acts were insufficient to show motive, intent, or similarity evidencing a common scheme or plan.

NRS 48.045(2) prohibits the introduction of evidence of other crimes, wrongs, or acts as proof of a person's character, but allows such evidence to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. While such evidence may be admitted for these limited purposes, this court has often looked upon the admission of prior bad acts evidence with disfavor because the evidence is often irrelevant and prejudicial, and forces a defendant to defend against vague and unsubstantiated charges.[3] For these reasons, such evidence is presumed to be inadmissible, and the State bears the burden of requesting the admission of the evidence and establishing its admissibility.[4] To accomplish this task, the State must demonstrate, at a hearing outside the presence of the jury, that: "(1) the incident is relevant to the crime charged; (2) the act is proven by clear and convincing evidence; and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice."[5]

We have consistently held that the decision to admit or exclude such evidence is within the discretion of the trial court and will not

---

[2]101 Nev. 46, 692 P.2d 503 (1985).

[3]*Richmond v. State*, 118 Nev. 924, 932, 59 P.3d 1249, 1255 (2002) (quoting *Tavares v. State*, 117 Nev. 725, 730, 30 P.3d 1128, 1131 (2001)).

[4]*Tavares*, 117 Nev. at 731, 30 P.3d at 1131.

[5]*Tinch v. State*, 113 Nev. 1170, 1176, 946 P.2d 1061, 1064-65 (1997).

be overturned absent a showing that the decision is manifestly incorrect.[6] Moreover, we have determined that when the district court fails to conduct a hearing establishing the aforementioned requirements, that failure is reversible error unless "(1) the record is sufficient for this court to determine that the evidence is admissible under the test for admissibility of bad acts evidence set forth in *Tinch*; or (2) where the result would have been the same if the trial court had not admitted the evidence."[7]

In the instant case, we conclude that the trial court did conduct a hearing to determine the admissibility of the evidence. During the course of the hearing, the district court found the prior bad acts testimony to be relevant as to both intent and similarity and found the evidence to be more probative than prejudicial. However, we conclude that the district court erred in failing to make a determination that the prior bad acts were proven by clear and convincing evidence. Despite this omission, we conclude that such a finding can be implied from the district court's findings, and the trial court properly admitted the prior bad acts evidence in this instance. The record sufficiently establishes the occurrence of the collateral acts by clear and convincing evidence.

In this case, the prior bad acts involved situations wherein Rhymes used his skills as a masseur to gain sexual access to his victims. When the victim in this case awoke to find her pajamas pulled down and Rhymes lying beside her, he began to discuss his employment as a masseur and began massaging the victim's leg. This demonstrates a strong similarity between the prior acts and those involved in the present case. It is notable that the prior bad acts occurred very close in time to the acts charged in the instant case, further demonstrating Rhymes' intent to use his skills as a masseur to facilitate sexual contact with his potential victims.

As a result, the district court determined that the evidence was relevant and allowed it to be admitted. Moreover, after listening to the arguments made by the State and by Rhymes, the court acknowledged that while ordinarily such evidence would not be admitted, in this particular instance the State's arguments were compelling and, therefore, the evidence was admissible. Because this decision was not manifestly erroneous, this court concludes that the evidence of uncharged prior bad acts was properly admitted in this case.

[6]*Braunstein v. State,* 118 Nev. 68, 72, 40 P.3d 413, 416 (2002).

[7]*Qualls v. State,* 114 Nev. 900, 903-04, 961 P.2d 765, 767 (1998).

*The district court's failure to give a limiting instruction at the time the evidence was admitted*

Rhymes contends that the district court erred by failing to provide a limiting instruction prior to the testimony of the two witnesses who testified concerning Rhymes' alleged prior bad acts. In contrast, the State contends that it was unnecessary to provide an instruction at the time the evidence was admitted because here the prior bad acts evidence involved acts that were not uncharged bad acts in that Rhymes had been previously charged with crimes based on his actions. We disagree with the State, and today we clarify the meaning of the term "uncharged bad acts" as set forth in *Tavares.*

In *Tavares,* we determined that when a district court admits uncharged bad acts into evidence, "a limiting instruction should be given both at the time evidence of the uncharged bad acts is admitted and in the trial court's final charge to the jury."[8] We considered the provision of the instruction upon the admission of the evidence particularly important because it permits the instruction to "take effect before the jury has been accustomed to thinking of it in terms of the inadmissible purpose."[9]

In *Tavares,* the district court failed to provide a limiting instruction on prior bad acts that occurred six years prior to the crime charged.[10] The State never brought charges against Tavares for the commission of those prior bad acts. The State contends that as a result the instant case is distinguishable because the testimony admitted here concerned acts for which Rhymes was charged in another case. Therefore, the State contends that *Tavares* is inapplicable.

We disagree. We note that the term "uncharged bad acts" refers to any acts uncharged in the case at bar. It does not refer to acts that were never charged in any case. The fact that the prior bad acts have been charged in another matter does not negate the requirement that the State must request a limiting instruction prior to the admission of bad acts evidence, nor does it alleviate the district court of its burden to give such an instruction sua sponte if the prosecutor fails to request one.

---

[8]*Tavares,* 117 Nev. at 733, 30 P.3d at 1133.

[9]*Id.* (quoting 21 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5066 (1977 & Supp. 2001)).

[10]*Id.* at 728-29, 30 P.3d at 1130.

However, under *Tavares* we consider the failure to give such a limiting instruction to be harmless if the error did not have a substantial and injurious effect or influence the jury's verdict.[11] Here, the district court gave an instruction prior to the jury being charged. Therefore, the jury was properly informed that the prior bad acts evidence could be considered only for the limited purpose of proving intent and similarity between the acts. Inasmuch as the jury was provided with this critical information prior to its deliberation and there was uncertainty whether the prior bad acts were "uncharged bad acts," we conclude that the absence of such an instruction at the time the evidence was admitted did not substantially affect Rhymes' rights. Accordingly, we conclude that the failure to give the limiting instruction upon admission of the evidence in this case was harmless error under the facts of this case.

## CONCLUSION

We conclude that the district court erred by failing to expressly determine if the prior bad acts were proven by clear and convincing evidence. However, we conclude that such a failure does not constitute reversible error because the record sufficiently demonstrates, by clear and convincing evidence, that the prior bad acts occurred. Moreover, we conclude that the district court erred when it failed to give the jury a limiting instruction at the time the testimony on the prior bad acts was admitted. Nevertheless, we conclude that such an error was harmless because the jury received a limiting instruction prior to being charged and therefore the district court's failure did not impact Rhymes' substantial rights in such a manner as to warrant reversal. There is no evidence to suggest that Rhymes requested such an instruction at the time the evidence was admitted, which would have required that the instruction be given.

Accordingly, we affirm the judgment of conviction.

---

[11]*Id* at 732, 30 P.3d at 1132.