An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

## IN THE SUPREME COURT OF THE STATE OF NEVADA

JOHNNY ABBY MARQUEZ,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 58568

**FILED**

MAR 2 8 2013

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

### ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of three counts of sexual assault of a minor under 14 years of age and three counts of lewdness with a minor under 14 years of age. Eighth Judicial District Court, Clark County; Doug Smith, Judge.

Appellant Johnny Marquez lived with his girlfriend, Pamela, in Las Vegas. Though Pamela's daughter, V.V., primarily lived with her stepfather, V.V. frequently visited Pamela. In 2008, six-year-old V.V. disclosed to her stepfather that Marquez had been sexually abusing her during the visits for approximately three years. V.V. told her stepfather that Marquez had sexually assaulted her and committed lewd acts. The stepfather subsequently reported the conduct to police. After a five-day jury trial in early 2011, Marquez was found guilty on all six counts. The district court sentenced Marquez to six life sentences with parole eligibility in 40 years.

Marquez now appeals his conviction on the following grounds: (1) the district court abused its discretion in denying Marquez's pretrial proper person motion to dismiss counsel and appoint substitute counsel, (2) the district court abused its discretion in refusing to allow Marquez to recall the victim and her mother for further examination, (3) the district court's conduct during trial constituted improper judicial bias, (4) the

SUPREME COURT
OF
NEVADA

(O) 1947A

13-09201

district court abused its discretion by admitting prior bad act evidence, (5) the State improperly commented on Marquez's refusal to provide a DNA sample and his request for an attorney, (6) the district court abused its discretion in denying Marquez's proffered jury instruction regarding opinion evidence, and (7) cumulative error warrants reversal of the judgment of conviction. We conclude that each of Marquez's arguments lacks merit, and therefore, we affirm the judgment of conviction. The parties are familiar with the facts and procedural history of this case, and we do not recount them further except as is necessary for our disposition.

The district court properly denied Marquez's motion to dismiss counsel

Marquez argues that the district court erred in denying his motion to dismiss his counsel, Robert Lucherini, and appoint substitute counsel and that a full evidentiary hearing should have been conducted to determine Lucherini's effectiveness. Marquez also argues that the district court erred by not discharging his counsel due to a lack of communication during the pretrial phase.[1] We disagree.

At a hearing on July 21, 2010, three weeks prior to the scheduled jury trial, the district court heard Marquez's motion to substitute counsel. The district court expressed concern regarding the timeliness of Marquez's motion and explained that granting Marquez's motion would result in a delay of trial. Nonetheless, the district court agreed to review Marquez's exhibits and render a decision at the August 4,

---

[1]Because Marquez appeals the district court's denial of his motion to substitute counsel, his ineffective assistance of counsel concerns are not properly before this court. The proper vehicle for ineffective assistance of counsel claims is through a timely post-conviction petition for a writ of habeas corpus. Evans v. State, 117 Nev. 609, 622, 28 P.3d 498, 507 (2001).

2010, calendar call. After two weeks of consideration, the district court denied the motion for substitution of counsel. Due to court scheduling conflicts and defense counsel's notification that CPS documents still needed to be analyzed and supplied to the State, the trial was continued.

We review a district court's denial of a motion to dismiss counsel for an abuse of discretion. Garcia v. State, 121 Nev. 327, 337, 113 P.3d 836, 843 (2005). "[A] defendant in a criminal trial does not have an unlimited right to the substitution of counsel." Id. at 337, 113 P.3d at 842. To demonstrate a Sixth Amendment violation, a defendant must show sufficient cause. Id. (noting that sufficient cause would be "a complete collapse of the attorney-client relationship"). When reviewing a denial of a motion to substitute counsel, we consider the following three factors: "(1) the extent of the conflict between the defendant and his or her counsel, (2) the timeliness of the motion and the extent to which it will result in inconvenience or delay, and (3) the adequacy of the court's inquiry into the defendant's complaints." Id. at 337, 113 P.3d at 842-43 (citing Young v. State, 120 Nev. 963, 968, 102 P.3d 572, 576 (2004)).

As to the extent of the conflict, Marquez argues that Lucherini's pretrial investigations were inadequate and that Lucherini failed to communicate with him for six months. However, Marquez does not argue that a complete collapse in the attorney-client relationship occurred, and it does not appear that such a collapse existed. Lucherini's pretrial investigation does not appear to be wholly inadequate. The record indicates that Lucherini did conduct investigation, as he alluded to discovery his investigator obtained from CPS at the August 2010 calendar call. Further, Marquez failed to specify what relevant evidence he believed would have resulted from a more thorough investigation.

Lucherini also does not appear to have ignored Marquez's attempts to communicate. The record reveals at least five instances of contact between Marquez and his attorney. Additionally, Marquez did not indicate any dissatisfaction with his representation until he filed his motion a few weeks before trial, despite his allegation that Lucherini had not communicated with him for six months. See Garcia at 337-38, 113 P.3d at 843 (where the defendant made allegations of, among other things, failure to communicate and failure to investigate, but same was belied by the record, denying the motion to substitute counsel was proper).

As for the timeliness of the motion and the chances of trial delay, Marquez's motion was presented three weeks before trial. Granting Marquez's motion would have resulted in inconvenience and delay. We also note that this was the first time Marquez alleged any problems between he and his counsel. This too is factually similar to Garcia. See id. at 338-39, 113 P.3d at 843 (where the defendant brought his motion to substitute counsel at calendar call and never alleged a problem with counsel in the time between appointment and trial, defendant's motive was held suspect and the motion was denied as it would have resulted in inconvenience or delay).

Although the district court's oral inquiry was brief, we conclude it was adequate. A review of the record reveals that the "attorney log" attached to Marquez's motion, which was expressly taken under advisement by the district court judge, was very in-depth and provided the same information that would have been provided at a hearing. Since Marquez admitted in this "attorney log" to at least five occasions of attorney contact, including discussions regarding plea bargains and a conversation with an investigator, it was reasonable for

the district court to deny Marquez's motion. See id. at 339, 113 P.3d at 843-44 (an in camera hearing may be unnecessary given the particular circumstances of a case, such as where communication between attorney and client is established by other means).

Further, the actual start date of trial, six months later, alleviated any prejudice regarding the alleged lack of communication and investigation. This appears confirmed by the fact Marquez never renewed his motion for substitution. See Young, 120 Nev. at 969, 102 P.3d at 576 (the extent of conflict was evidenced, in part, by defendant filing multiple motions to substitute counsel). Accordingly, the district court did not abuse its discretion in denying Marquez's motion to dismiss counsel and for appointment of alternate counsel.

The district court did not abuse its discretion in refusing to permit Marquez to recall V.V. and Pamela

Marquez argues that the district court did not have discretion to prevent him from recalling principal State witnesses V.V. and Pamela, and that doing so denied his rights to present a defense and to a fair trial. Marquez insists that he needed to recall V.V. and Pamela after the testimonies of V.V.'s biological father and stepfather. We disagree.

The district court has discretion to deny a party's request to recall a witness for additional cross-examination when the party already had an "abundant opportunity to draw out his case." Collins v. State, 88 Nev. 9, 13-14, 492 P.2d 991, 993 (1972). We will not reverse the district court's decision unless there was an abuse of discretion. Id. at 14, 492 P.2d at 993.

On the assumption that the State intended to call V.V. and Pamela early in its case-in-chief, before the presentation of evidence by either side even began, Marquez requested that the court allow him to

question Pamela and V.V. again following the testimony of V.V.'s father and stepfather. The district court denied this request, instead allowing Marquez abundant leeway to exceed the scope of direct during cross-examination and recross-examination of both V.V. and Pamela.

A trial judge has broad authority to manage his or her courtroom to ensure that business is conducted efficiently and fairly. NRS 50.115(1). We conclude that the district court judge was properly managing the courtroom when he denied Marquez's requests to recall the witnesses and that the decision to do so did not infringe on Marquez's right to present a defense. This is true for two reasons. First, Pamela actually testified following V.V.'s father and stepfather. Thus, any argument as to the need to recall her was moot, since Marquez was given an abundant opportunity to draw out his theories of defense during her cross-examination. Second, as for V.V., we note that Marquez presented multiple reasons, before trial even started, why he believed he needed to recall V.V. after the testimony of her biological father and stepfather. The district court gave Marquez significant leeway and an abundant opportunity to develop his speculative defense theories during V.V.'s cross-examination. That these theories never came to fruition does not equate to Marquez being denied the right to present a defense. Additionally, the district court clearly articulated that it sought to protect V.V. from harassment, and therefore we conclude that the district court properly exercised its discretion by not requiring V.V., a minor child, to return the next day. Therefore, the district court did not abuse its discretion or preclude Marquez from presenting his defense.

Marquez failed to demonstrate judicial bias

Marquez argues that the district court exceeded its proper role as the governor of the trial. Specifically, Marquez alleges that the district

court judge revealed bias to the jury by his actions and words, which prejudiced him and denied him due process. We disagree.

Marquez did not object to judicial bias at trial, so we review the district court's conduct for plain error. See Green v. State, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003). Marquez must show the asserted error affected his substantial rights, by causing "actual prejudice or a miscarriage of justice." Id. We presume a judge's impartiality, and the party asserting judicial bias must establish sufficient grounds for disqualification based on facts rather than speculation. Rippo v. State, 113 Nev. 1239, 1248, 946 P.2d 1017, 1023 (1997).

Although some of the comments made by the district court may not have been necessary, we conclude that none of the district court's comments demonstrated judicial bias. The district court's comments did not show that it had closed its mind to the evidence. See Cameron v. State, 114 Nev. 1281, 1283, 968 P.2d 1169, 1171 (1998) ("[R]emarks of a judge made in the context of a court proceeding are not considered indicative of improper bias or prejudice unless they show that the judge has closed his or her mind to the presentation of all the evidence."). Rather, the district court simply maintained order in its courtroom and protected witnesses. In reviewing the trial record as a whole, we conclude that the district court's actions did not affect Marquez's substantive rights and were not of such magnitude to create an unfair trial ambience. See McNair v. State, 108 Nev. 53, 62, 825 P.2d 571, 577 (1992) (improper judicial actions must be "so pervasive and of such a magnitude that the trial ambiance is discernibly unfair to the defendant when viewed from the cold record on appeal").

 

<u>The district court did not abuse its discretion in permitting Pamela to</u>
<u>testify to prior domestic violence</u>

Marquez argues that the wrongful admission of irrelevant, prejudicial, and uncharged other crimes as bad act evidence deprived him of his due process and violated his right to a fair trial. Marquez argues that he was "blindsided" by Pamela's testimony about battery, domestic violence, and threats to her life. We disagree.

Marquez failed to preserve the argument that Pamela's domestic violence testimony was impermissible bad act evidence, and only objected to the line of questioning as being unfairly prejudicial. Therefore, we only review the issue for plain error. See <u>Green</u> 119 Nev. at 545, 80 P.3d at 95; <u>Merica v. State</u>, 87 Nev. 457, 462, 488 P.2d 1161, 1163-64 (1971) (the defendant's failure to specifically object on the grounds urged on appeal precluded appellate consideration of those grounds).

Generally, evidence of prior bad acts is inadmissible for the purpose of showing that a person acted in conformity with the previous bad act. NRS 48.045(1). However, a district court may admit evidence of other crimes, wrongs, or acts "for any relevant nonpropensity purpose," when certain procedural requirements and criteria are met. See <u>Bigpond v. State</u>, 128 Nev. at ___, ___, 270 P.3d 1244, 1249 (2012); NRS 48.045(2). Even if the district court does not conduct a <u>Petrocelli</u> hearing to review bad act evidence outside the presence of the jury, reversal is not mandated where: "(1) the record is sufficient for this court to determine that the evidence is admissible under the test for admissibility" established by <u>Tinch v. State</u>, 113 Nev. 1170, 1176, 946 P.2d 1061, 1064-65 (1997); or (2) "the result would have been the same if the trial court had not admitted the evidence." <u>Rhymes v. State</u>, 121 Nev. 17, 22, 107 P.3d 1278, 1281 (2005) (internal quotations omitted).

One of Marquez's defense theories involved attacking Pamela's character as a mother and V.V.'s home environment. Pamela admitted that at first, she did not believe V.V.'s allegations. Outside the presence of the jury, the State discussed how Pamela's disbelief may have been attributable to Marquez's manipulation of Pamela through domestic abuse. The State informed the district court of its intention to stay away from Marquez's past physical and mental abuse on direct examination, however, the State cautioned the defense about the fine line they were walking "before they open [the] door" about why Pamela initially disbelieved her daughter. Prior to eliciting the domestic violence testimony, the State even warned Marquez that it would attempt to admit the domestic violence testimony if Marquez attempted to question Pamela's belief. As such, Marquez was not "blindsided" by Pamela's responses.

Despite the bench conference, during Marquez's recross-examination of Pamela, his counsel asked a question to which Pamela answered with a disclosure of the domestic violence. Following this exchange, the State requested another bench conference seeking a ruling allowing the domestic violence evidence since Marquez's counsel opened the door. Marquez claimed such evidence was unfairly prejudicial because the abuse was uncorroborated. The district court permitted the State to follow up on Marquez's questions. After the State's questioning regarding the domestic violence evidence, Marquez's counsel attempted to attack Pamela's credibility with questions designed to show that she never called the police and that no one else heard the abuse despite the fact she lived in apartments and hotels.

 

We conclude that Marquez opened the door to the domestic violence testimony and thus, invited any error. Marquez was aware of domestic violence allegations and clearly provoked Pamela's answer during his line of questioning. Further, he reiterated the allegations by attacking lack of corroboration. See Pearson v. Pearson, 110 Nev. 293, 297, 871 P.2d 343, 345 (1994) (holding plain error does not exist when the complaining party contributed to the error because a defendant "will not be heard to complain on appeal of errors which he himself induced or provoked the court or the opposite party to commit" (citation and internal quotation omitted)). The State properly expounded on the testimony in an attempt to rehabilitate Pamela's credibility. See Rippo v. State, 113 Nev. at 1253, 946 P.2d at 1026 (holding that where defense counsel opened the door on cross-examination in an attempt to portray a witness as mentally unstable, the State properly attempted to rehabilitate his credibility); see also Wesley v. State, 112 Nev. 503, 513, 916 P.2d 793, 800 (1996) (holding that defense counsel opened the door to the prosecutor's comments on cross-examination, which attempted to rehabilitate the witness's credibility). Additionally, even if the domestic violence allegation was impermissible bad act evidence, we conclude that there was no plain error because this short segment of testimony did not change the outcome of the case. See Rhymes, 121 Nev. at 22, 107 P.3d at 1281.

The State did not improperly comment on Marquez's refusal to submit to a DNA test

Marquez argues that the State improperly commented on his valid constitutional privileges by questioning him about his refusal to provide a DNA sample, which violated his Fifth and Sixth Amendment rights and denied him due process. We disagree.

Marquez failed to object to the State's questioning regarding his refusal to submit to a DNA test, and even agreed to such questioning on three separate occasions. Marquez also consented to the admission of the DNA consent form, which showed Marquez's refusal to submit his DNA. Therefore, we review for plain error. Green, 119 Nev. at 545, 80 P.3d at 95.

We conclude that Marquez opened the door to the DNA questioning by discussing DNA while attacking the thoroughness of the police investigation. The State's reference to Marquez's refusal to provide a DNA sample was meant to rebut Marquez's own testimony that police failed to complete a thorough investigation, inclusive of testing suspects' DNA. See Wesley v. State, 112 Nev. at 513, 916 P.2d at 800 (holding that defense counsel opened the door to the prosecutor's comments on cross-examination); see also U.S. v. Whitworth, 856 F.2d 1268, 1285 (9th Cir. 1988) ("Under the rule of curative admissibility, or the 'opening the door' doctrine, the introduction of inadmissible evidence by one party allows an opponent, in the court's discretion, to introduce evidence on the same issue to rebut any false impression that might have resulted from the earlier admission."). Therefore, since Marquez invited any error, there was no actual prejudice to him, and the DNA questioning did not affect his substantive rights. See Green, 119 Nev. at 545, 80 P.3d at 95.

The State did not improperly comment on Marquez's invocation of his right to counsel during its closing

Marquez also argues that his request for an attorney should not have been used against him at a later court proceeding. Marquez claims the prosecutor emphasized his invocation of his Fifth and Sixth Amendment privileges in closing rebuttal argument. We disagree.

Generally, we employ a two-step analysis to review claims of prosecutorial misconduct. Valdez v. State, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). The first step requires this court to ascertain whether the prosecutor's conduct was improper. Id. If we determine that the conduct was improper, the second step requires review for harmless error and to "determine whether the improper conduct warrants reversal." Id. However, harmless error review only applies if a defendant has preserved the error for appeal by objecting to the prosecutor's conduct at trial. Valdez, 124 Nev. at 1190, 196 P.3d at 477. The purpose of objecting to misconduct at trial is so that the district court can "rule upon the objection, admonish the prosecutor, and instruct the jury." Hernandez v. State, 118 Nev. 513, 525, 50 P.3d 1100, 1109 (2002). See also Parker v. State, 109 Nev. 383, 391, 849 P.2d 1062, 1067 (1993) ("[T]o preserve the issue of prosecutorial misconduct for appeal, the defendant must raise timely objections and seek corrective instructions."). When an objection is not preserved, we instead review for plain error. Valdez, 124 Nev. at 1190, 196 P.3d at 477.

Marquez did not object during the State's closing rebuttal argument when mention was made that he sought to invoke counsel; thus, we review for plain error. Id. In context, the State's comment only pointed out inconsistencies between Marquez's testimony and the police interview transcript for impeachment purposes. See Leonard v. State, 117 Nev. 53, 81, 17 P.3d 397, 414 (2001) ("'[A] criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone.'" (quoting United States v. Young, 470 U.S. 1, 11 (1985))). The comment did not imply guilt from Marquez's request for counsel. Furthermore, Marquez was the one who first mentioned asking for an

SUPREME COURT
OF
NEVADA

(O) 1947A

12

attorney multiple times during his testimony. Marquez's counsel also consented to questions regarding invoking the right to an attorney.

Because the brevity of the comment, in the context of closing, was not unfairly prejudicial, we conclude that the State's comment does not constitute plain error. See Pacheco v. State, 82 Nev. 172, 179-80, 414 P.2d 100, 104 (1966) (concluding that the prosecutor's objectionable rebuttal remark regarding rehabilitation did not warrant reversal when defense counsel initiated the subject of rehabilitation).

The district court did not abuse its discretion in denying Marquez's jury instruction regarding opinion evidence

Marquez argues that the district court erred in denying his proposed jury instruction concerning opinion evidence. Marquez also argues that the State's admitted instruction on opinion evidence did not highlight the extreme importance of factual evidence in this case. We disagree.

"The district court has broad discretion to settle jury instructions, and this court reviews the district court's decision for an abuse of that discretion or judicial error." Crawford v. State, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). "Jury instructions that tend to confuse or mislead the jury are erroneous." Carver v. El-Sabawi, 121 Nev. 11, 14, 107 P.3d 1283, 1285 (2005). A party has "no right to have requested instructions given when they do not correctly state the law." Harris v. State, 83 Nev. 404, 407, 432 P.2d 929, 931 (1967). The district court may "refuse an instruction when the law in that instruction is adequately covered by another instruction given to the jury." Rose v. State, 123 Nev. 194, 205, 163 P.3d 408, 415 (2007) (internal quotations omitted).

Marquez's denied instruction stated:

> Opinion evidence cannot be used as factual evidence. The jury can only use factual evidence in their deliberation of the case. The opinion evidence can help people unfamiliar with these issues understand, but opinion evidence cannot be used as fact and cannot be used as factual evidence, and therefore opinion evidence cannot be used as factual evidence to make your decision. It can make you understand the components position, but cannot be used to decide the outcome of the case only factual evidence can do that.

Marquez's counsel wrote this instruction himself and was unable to cite any caselaw or statute to support it. The instruction also does not delineate between lay opinion and expert opinion.

First, we concur with the district court that the proposed instruction is confusing, and conclude that it likely would have confused the jury. It does not establish whether it speaks to lay opinions or expert opinions. It also contains needless repetition, and we are unsure what is meant by "components." As such, it would have been error to give. Second, the proposed instruction fails to state correct law. Specifically, the language "[t]he jury can only use factual evidence in their deliberation" is incorrect, as NRS 50.265 establishes limited circumstances where lay opinion can be introduced and considered, while the admission and consideration of expert opinion is codified in NRS 50.275 et seq. Third, Instruction 9 adequately set forth the correct law governing expert witness opinion, while Instruction 7 discussed direct evidence and circumstantial evidence, which would include opinions. Therefore, we conclude the district court did not abuse its discretion by denying Marquez's proposed instruction.

<u>Cumulative error does not warrant reversal</u>

This court will reverse a conviction when the cumulative effect of errors violates a defendant's right to a fair trial. <u>Rose</u>, 123 Nev. at 211, 163 P.3d at 419. We conclude that any errors do not cumulate to violate Marquez's right to a fair trial.[2]

Based on the above, we conclude that each of Marquez's arguments lack merit. Accordingly, we

ORDER the judgment of the district court AFFIRMED

_____, J.
Gibbons

_____, J.
Douglas

_____, J.
Saitta

cc:   Hon. Doug Smith, District Judge
      Terrence M. Jackson
      Attorney General/Carson City
      Clark County District Attorney
      Eighth District Court Clerk

---

[2]We have considered Marquez's remaining arguments and conclude they are without merit.

SUPREME COURT
OF
NEVADA

(O) 1947A