An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

## IN THE SUPREME COURT OF THE STATE OF NEVADA

DUANE DAVID GRAY,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 61987

**FILED**

SEP 2 9 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

### ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of battery upon an officer with a deadly weapon and failure to stop at the scene of an accident involving personal injury. Sixth Judicial District Court, Humboldt County; Michael Montero, Judge.

While driving towards a location near a wildfire, appellant Duane David Gray struck a police officer who was operating a roadblock. Gray then drove away. At trial and on appeal Gray argued that at the time of the incident he experienced symptoms of post-traumatic stress disorder (PTSD) which impaired his mind and precluded criminal liability. Both Gray and the State called expert witnesses to testify about Gray's mental health and the effect of his PTSD. After a three-day jury trial, Gray was convicted of battery upon an officer with a deadly weapon and failure to stop at the scene of an accident involving personal injury.

The issues on appeal are: (1) whether there was sufficient evidence to support Gray's conviction for battery upon an officer with a deadly weapon, (2) whether the district court abused its discretion by not admitting evidence proffered by Gray, and (3) whether the district court

SUPREME COURT
OF
NEVAOA

(O) 1947A

14-32210

abused its discretion by allowing the State to ask witnesses about Gray's criminal history and past marijuana use.[1]

*There was sufficient evidence to support the battery upon an officer with a deadly weapon conviction*

Gray contends that there was insufficient evidence to support his battery upon an officer with a deadly weapon conviction because the evidence did not demonstrate that he intended to strike the officer.[2]

In order to determine "whether a verdict was based on sufficient evidence to meet due process requirements, [we] will inquire 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Mitchell v. State*, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008) (quoting *Koza v. State*, 100 Nev. 245, 250, 681 P.2d 44, 47 (1984)); *see also Jackson v. Virginia*, 443 U.S.

---

[1]Gray also raises the following issues on appeal: (1) whether the State committed a *Brady* violation, *see Brady v. Maryland*, 373 U.S. 83 (1963); (2) whether the prosecutor committed misconduct by allegedly suggesting that a witness was intimidated and discussing Gray's subpoena of the witness; (3) whether the prosecutor committed misconduct during closing arguments; (4) whether the district court abused its discretion by not giving Gray's proposed jury instructions; (5) whether the district court's refusal to admit some of Gray's proffered evidence violated his Sixth Amendment Confrontation Clause rights; (6) whether the district court abused its discretion by refusing to let Gray call a fact witness to rebut the testimony of the State's expert witness; (7) whether the district court abused its discretion by refusing to admit an incomplete printout of an article from a newspaper's website; and (8) whether cumulative error warrants reversal. We conclude that these issues are without merit, and we will not discuss them further.

[2]Gray does not contest the sufficiency of the evidence supporting his conviction for his failure to stop at the scene of an accident involving personal injury.

SUPREME COURT
OF
NEVADA

(O) 1947A

2

307, 319 (1979). "[We] will not reweigh the evidence or evaluate the credibility of witnesses because that is the responsibility of the trier of fact." *Mitchell*, 124 Nev. at 816, 192 P.3d at 727. Since a defendant's state of mind "is a subjective matter, and, therefore, is seldom susceptible of proof by direct evidence," it may be inferred from circumstantial evidence. *Sheriff v. Hodes*, 96 Nev. 184, 187, 606 P.2d 178, 180 (1980).

Battery committed with a deadly weapon is a felony that aggravates the misdemeanor of battery. NRS 200.481(2)(e)(1). Battery is the "willful and unlawful use of force or violence upon the person of another." NRS 200.481(1)(a). A deadly weapon is "[a]ny weapon, device, instrument, material or substance which, under the circumstances in which it is used, attempted to be used or threatened to be used, is readily capable of causing substantial bodily harm or death." NRS 193.165(6)(b).

To support its theory that Gray intentionally struck the officer with his vehicle, the State presented testimony from two eyewitnesses: Gray's passenger and the police officer that Gray struck. Both witnesses testified that Gray drove his vehicle into the officer and knocked him back several feet. Since Gray drove his vehicle at the officer in a manner that made it "readily capable of causing substantial bodily harm or death," Gray used his vehicle as a deadly weapon. NRS 193.165(6)(b); *see also Bustamante v. Evans*, 140 F. App'x 655, 656 (9th Cir. 2005) (holding that a defendant used his vehicle as a deadly weapon by driving it at a police car). Thus, there was sufficient evidence that Gray used his vehicle as a deadly weapon.

Despite evidence suggesting that Gray accidentally struck the officer, there was sufficient evidence for the jury to find that Gray willfully struck the officer. Gray's passenger testified that before turning onto the

road where the incident occurred, she observed the officer blocking the road with his police car and turning away traffic. She testified that the officer held his hands up to signal for Gray to stop. The officer testified that he made eye contact with Gray when Gray was approximately 30 feet from him.

The State's expert witness, a psychiatrist, testified that Gray was previously diagnosed with "adult antisocial behavior," a condition that would cause him to challenge authority. Thus, Gray's actions, the visibility of the roadblock, and the psychiatrist's testimony suggesting a motive for physical confrontation with a police officer were sufficient to allow a reasonable jury to conclude that Gray intentionally drove his vehicle into the officer. Thus, there was sufficient evidence to support the jury's verdict that Gray committed battery upon an officer with a deadly weapon.

*The district court's rejections of Gray's proffered evidence*

Gray argues that the district court made multiple erroneous rulings that excluded evidence that he proffered. We address two of these rulings.[3]

The district court's decision "to admit or exclude evidence is given great deference and will not be reversed absent manifest error." *Baltazar-Monterrosa v. State*, 122 Nev. 606, 613-14, 137 P.3d 1137, 1142 (2006). A district court's improper exclusion of evidence is reviewed for harmless error. *Vallery v. State*, 118 Nev. 357, 371-72, 46 P.3d 66, 76 (2002). An error is harmless, and not grounds for reversal, unless there

---

[3]As stated in footnote 1, Gray's other assignments of error relating to the rejection of his proffered evidence are without merit.

was a "substantial and injurious effect or influence in determining the jury's verdict." *Mclellan v. State*, 124 Nev. 263, 270, 182 P.3d 106, 111 (2008) (internal quotations omitted).

*The district court abused its discretion by not allowing Gray to call Kyle Ebert during his case-in-chief, but this abuse was harmless*

Gray argues that the district court abused its discretion by not allowing him to call Kyle Ebert as a witness to testify about Ebert's observations of helicopters near the scene of the incident. As part of his argument, Gray contends that NRS 174.234, *held unconstitutional in part by Grey v. State*, 124 Nev. 110, 118, 178 P.3d 154, 160 (2008), did not require him to disclose Ebert before trial because he discovered Ebert during trial. The State argues that the district court did not abuse its discretion by refusing to allow Ebert to testify because Gray did not provide notice as required by NRS 174.234.

NRS 174.234(1) requires the State and a defendant to provide each other with written notice of potential witnesses before trial. This statute allows a party to call a witness who was not disclosed before trial if the party provides updated notice to the other party, unless "the party [calling the witness] acted in bad faith by not including the witness on the written notice." NRS 174.234(3)(a). Bad faith requires an intent to act for an improper purpose. *See Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001) (defining "bad faith" in the context of a court's power to sanction a party). Furthermore, we recognize that in criminal cases there is "a strong presumption to allow the testimony of even late-disclosed witnesses." *Sampson v. State*, 121 Nev. 820, 827, 122 P.3d 1255, 1260 (2005). Thus, NRS 174.234's exclusion applies when a party intentionally acts for an improper purpose when not disclosing a witness. Here, Gray provided "written notice . . . as soon as practicable after . . . determin[ing]

that [he] intend[ed] to call an additional witness" because he provided this notice to the State the morning after he decided to call Ebert. NRS 174.234(3)(a). Thus, the record does not show that Gray violated NRS 174.234 by not disclosing Ebert before trial.

Ebert's proposed testimony related to whether Gray could have sensed a purported trigger for his PTSD symptoms at the time of the incident and therefore was relevant to Gray's proffered defense. *See* NRS 48.015 (providing that evidence is relevant if it "[has] any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence"). Thus, the district court should have allowed Ebert to testify. *See* NRS 48.025(1) (providing that all relevant evidence is admissible except as limited by statute or constitution). Therefore, the district court abused its discretion by excluding Ebert as a witness.

This error, however, was harmless because Ebert's testimony ultimately would have contributed to an invalid, diminished-capacity legal defense. Nevada recognizes insanity as an affirmative defense to criminal liability. NRS 194.010(3); *Finger v. State*, 117 Nev. 548, 568, 27 P.3d 66, 80 (2001). The insanity defense allows acquittal only when "a defendant [is] in a delusional state such that he cannot know or understand the nature and capacity of his act, or his delusion must be such that he cannot appreciate the wrongfulness of his act, that is, that the act is not authorized by law." *Finger*, 117 Nev. at 576, 27 P.3d at 84-85; *see also Blake v. State*, 121 Nev. 779, 793, 121 P.3d 567, 576 (2005) ("To be legally insane, a defendant must be in a delusional state preventing him from knowing or understanding the nature of his act or from appreciating the wrongfulness of his act."). Though we have not addressed whether PTSD

is a mental disease which can be the basis for an insanity defense, other jurisdictions have held that PTSD can. *See, e.g., United States v. Rezaq*, 918 F. Supp. 463, 467 (D.D.C. 1996), *aff'd*, 134 F.3d 1121 (D.C. Cir. 1998); *State v. Fichera*, 903 A.2d 1030, 1035 (N.H. 2006).

PTSD can also be relevant to the legal defense of diminished capacity. A diminished capacity defense "requires only a showing of a mental illness that is partially responsible for the defendant's conduct." *Miller v. State*, 112 Nev. 168, 173, 911 P.2d 1183, 1186 (1996). Some other jurisdictions recognize diminished capacity as a legal defense. *See, e.g., State v. Ellis*, 963 P.2d 843, 846 (Wash. 1998); *State v. Ferguson*, 662 S.E.2d 515, 520-21 (W.V. 2008). However, Nevada does not. *Crawford v. State*, 121 Nev. 744, 757, 121 P.3d 582, 591 (2005). Therefore, diminished capacity cannot be a legal defense in this case. *See id.*

Gray proffered Ebert's proposed testimony to advance the theory that observing helicopters "adrenalized" Gray and caused "his thoughts and actions [to be] adversely affected and/or slowed by his PTSD." This theory was supported by Gray's psychologist's testimony that Gray suffered from PTSD which caused him to become adrenalized and "[r]aise[d] his anxiety level . . . and his vigilance for threats and danger." Though PTSD is a mental disease, no evidence was proffered to show that Gray's PTSD caused him to be delusional. Nor did the evidence in the record show that Gray's PTSD prevented him from understanding the nature of his conduct or appreciating its wrongfulness. Thus, Ebert's proposed testimony, when combined with the other evidence in the record, would not have been sufficient to establish an insanity defense. Therefore, we do not resolve whether PTSD can be the basis for an insanity defense under Nevada law.

Instead of supporting an insanity defense theory, Ebert's testimony may have supported Gray's theory that PTSD caused "his thoughts and actions [to be] adversely affected and/or slowed." This theory is a diminished capacity defense, which is not recognized in Nevada. *Crawford*, 121 Nev. at 757, 121 P.3d at 591. Thus, Ebert's testimony would only have contributed to an invalid legal defense. *See id.* Therefore, the district court's refusal to let Ebert testify did not have a "substantial and injurious effect or influence in determining the jury's verdict" and was harmless. *See Mclellan*, 124 Nev. at 270, 182 P.3d at 111 (internal quotations omitted).

*The district court did not abuse its discretion by refusing to admit the Bureau of Land Management email*

Gray argues that the district court abused its discretion by refusing to admit, pursuant to the general exception to the hearsay rule, NRS 51.315, a copy of an email between two federal Bureau of Land Management (BLM) employees that was forwarded to one of Gray's attorneys.[4] The email concerned the use of helicopters to fight the fire near the scene of the incident. The district court refused to admit the email on the grounds of unreliability because the email "ha[d] gone through at least two different people before it was marked as an exhibit."

_____

[4]Gray also argues that the email is admissible as a public record pursuant to NRS 51.155. He did not raise this argument below, so we review it for plain error. *Nelson v. State*, 123 Nev. 534, 543, 170 P.3d 517, 524 (2007). Since Gray has not demonstrated that the district court's refusal to consider this unproffered hearsay exception was an error that was "so unmistakable that it is apparent from a casual inspection of the record" or that it prejudiced his substantive rights, this argument is without merit. *Id.* (internal quotations omitted).

NRS 51.315(1), which establishes the general exception to the hearsay rule, excludes a statement from the hearsay rule if (1) "[the statement's] nature and the special circumstances under which it was made offer strong assurances of accuracy" *and* (2) "[t]he declarant is unavailable as a witness." Both conditions must be met to make a statement admissible under this exception. *Id.* A statement has a strong assurance of accuracy when the person giving the statement had no connection to either party and the person making and the person recording the statement each lacked a "demonstrable motive either to inculpate or exculpate" the defendant. *Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987).

There was no evidence in the record that the BLM employees had any involvement in this case, a connection to either party, or a motive to secure or prevent a conviction. However, the BLM email was sent consecutively to two people, including Gray's attorney, before being offered as evidence. Thus, it lacked the "strong assurances of accuracy" necessary for admission under this hearsay exception. NRS 51.315(1). Since the BLM email failed to meet the first condition of the general hearsay exception, we do not address whether the second condition was satisfied. Therefore, the district court did not abuse its discretion by refusing to admit the BLM email under NRS 51.315's exception to the hearsay rule.

*The district court abused its discretion by allowing the State to ask witnesses about Gray's criminal history and prior marijuana use, but these abuses were harmless*

Gray argues that the district court abused its discretion by allowing the State to elicit testimony about his criminal history and prior marijuana use. The State argues that Gray opened the door to

consideration of these issues by making his mental health an issue in the case.

"[We] review[] a district court's decision to admit or exclude prior-bad-act evidence under an abuse of discretion standard." *Newman v. State*, 129 Nev. ___, ___, 298 P.3d 1171, 1178 (2013). Failure to conduct a hearing as required by *Petrocelli v. State*, 101 Nev. 46, 51-52, 692 P.2d 503, 507-08 (1985), *superseded by statute on other grounds as stated in Thomas v. State*, 120 Nev. 37, 44-45, 83 P.3d 818, 823 (2004), or give a necessary limiting instruction is subject to a harmless error analysis. *Rhymes v. State*, 121 Nev. 17, 22, 24, 107 P.3d 1278, 1281-82 (2005).

Evidence of a defendant's other crimes or wrongful acts is not admissible unless presented for a limited purpose, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." NRS 48.045(2). However, if a defendant opens the door to an issue that the State may otherwise not address, the State may provide evidence in response. *See Wesley v. State*, 112 Nev. 503, 513, 916 P.2d 793, 800 (1996).

If the State seeks to admit prior bad act evidence about an issue that the defendant did not open the door to, the district court must conduct a *Petrocelli* hearing on the record to determine "(1) that the evidence is relevant to the crime charged; (2) that the other act is proven by clear and convincing evidence; and (3) that the probative value of the other act is not substantially outweighed by the danger of unfair prejudice." *Qualls v. State*, 114 Nev. 900, 902, 961 P.2d 765, 766 (1998). When admitting prior bad act evidence, the district court must provide a limiting instruction. *Rhymes*, 121 Nev. at 23, 107 P.3d at 1282.

We will not reverse a conviction because of a district court's abuse of discretion when the abuse of discretion constitutes harmless error. *Knipes v. State*, 124 Nev. 927, 933, 192 P.3d 1178, 1182 (2008). An error is harmless unless there was a "substantial and injurious effect or influence in determining the jury's verdict." *Mclellan v. State*, 124 Nev. 263, 270, 182 P.3d 106, 111 (2008) (internal quotations omitted).

*Gray's criminal history*

The State inquired about Gray's prior criminal history during its cross-examination of Gray's expert witness, a psychologist. Before Gray objected, the State elicited a statement from the psychologist that Gray had been arrested or convicted at least two times before the present incident. The district court then conducted a *Petrocelli* hearing outside the jury's presence and found that testimony regarding Gray's prior criminal convictions was inadmissible because its probative value did not sufficiently outweigh its prejudicial impact. However, the district court did not instruct the jury to disregard the testimony about Gray's convictions that occurred simultaneously to his objection. Thus, the district court abused its discretion by not admonishing the jury to disregard this inadmissible testimony. *See Ledbetter v. State*, 122 Nev. 252, 265, 129 P.3d 671, 680 (2006) (holding that a witness's reference to an inadmissible subject "can be cured by an immediate admonishment directing the jury to disregard the statement" (internal quotations omitted)).

Here, the district court's abuse of discretion was harmless. The evidence which suggested that Gray had at least two prior arrests and convictions did not address the nature of the prior convictions, when or where they occurred, or any facts that would connect them to charged crimes. In addition, the discussion of Gray's prior criminal history

constituted an insignificant portion of the State's cross-examination of Gray's psychologist. Thus, the testimony about Gray's prior arrests and convictions lacked a "substantial and injurious effect or influence in determining the jury's verdict" and was harmless. *Mclellan*, 124 Nev. at 270, 182 P.3d at 111 (internal quotations omitted).

*Gray's prior marijuana use*

Since marijuana is a controlled substance, its past consumption is a prior bad act. Thus, the district court must conduct a *Petrocelli* hearing on the record before allowing the State to proffer evidence about it. *Qualls*, 114 Nev. at 902, 961 P.2d at 766.

On direct examination, the State's psychiatrist answered one question about Gray's prior marijuana use and testified that it had an unclear impact on Gray's mental health. The district court then conducted a hearing off the record and ruled that this testimony was admissible because Gray opened the door to expert testimony about his past marijuana use.[5] The record does not demonstrate that the district court resolved the *Petrocelli* issues in favor of admission of the evidence of Gray's prior marijuana use. Thus, Gray's prior marijuana use was only admissible if Gray opened the door to this issue.

---

[5]Though he raises the issue on appeal, Gray did not object when the State questioned his psychologist about Gray's prior marijuana use. We therefore review this issue for plain error. *Nelson*, 123 Nev. at 543, 170 P.3d at 524. The admission of this testimony was not plain error because Gray has not demonstrated that the admission affected his substantial rights and prejudiced him. *See Mitchell v. State*, 124 Nev. 807, 817, 192 P.3d 721, 728 (2008) (holding that the admission of prior bad act evidence was not plain error when the defendant put his character at issue and the evidence was relevant to his truthfulness).

Gray opened the door to consideration of his mental health by calling a psychologist to testify about his PTSD. However, Gray did not raise the issue of prior marijuana use because he did not develop any evidence relating to his use or nonuse of illicit drugs. Therefore, Gray did not open the door to the issue of his past marijuana use by making his mental health an issue. Since Gray did not open the door and the district court did not consider the *Petrocelli* factors on the record, the admission of testimony about Gray's prior marijuana use was an abuse of discretion.

However, this abuse was harmless. The evidence of Gray's past marijuana use was tangential to the charged crime because neither drug use nor impaired driving was alleged. In addition, the State's psychiatrist answered only one question about marijuana use and stated that the medical records were unclear about its impact. This issue was not a significant element of the psychiatrist's testimony, and the record does not suggest that it influenced her opinion about Gray's mental health. Thus, the limited evidence of Gray's prior marijuana use was harmless because it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Mclellan*, 124 Nev. at 270, 182 P.3d at 111 (internal quotations omitted).

*Conclusion*

There was substantial evidence to support Gray's conviction of battery upon an officer with a deadly weapon. Though the district court abused its discretion by not allowing Gray to call Ebert as a witness during his case-in-chief and by allowing testimony about Gray's prior bad

acts, these abuses were harmless. Finally, the district court did not abuse its discretion by refusing to admit the BLM email. Therefore, we

ORDER the judgment of the district court AFFIRMED.

_____, J.
Pickering

_____, J.
Parraguirre

cc:  Hon. Michael Montero, District Judge
     Dolan Law, LLC
     Attorney General/Carson City
     Humboldt County District Attorney
     Humboldt County Clerk

SAITTA, J., dissenting:

Though I agree with most of the majority's conclusions, I respectfully disagree with the majority's holding that the district court's abuse of discretion in failing to admonish the jury to disregard the improper testimony about Gray's criminal history was a harmless error. Therefore, I respectfully dissent.

The majority seems not to fully account for the prejudicial effect that evidence of a prior conviction may have on a criminal defendant. *See Crawford v. State*, 107 Nev. 345, 348, 811 P.2d 67, 69 (1991) (stating that evidence of prior bad acts "may unduly influence the jury, and result in a conviction of the accused because the jury believes he is a bad person" (internal quotations omitted)). Instead of directly addressing this issue, the majority concludes that the district court's abuse of discretion was harmless because the testimony about Gray's criminal history was brief and "did not address the nature of the prior convictions, when or where they occurred, or any facts that would connect them to charged crimes."

However, the improper testimony's brevity and omissions do not render it harmless. There is no way to know whether or to what extent the jury considered Gray's criminal history. Though this testimony was vague and brief, it nonetheless informed the jury about Gray's repeated arrests and convictions. The district court's failure to admonish the jury to disregard this testimony may have allowed the jury to identify Gray as a criminal who deserved punishment for his past crimes or to use his prior arrests and convictions as propensity evidence to conclude that he committed the present crimes. In a case like this, propensity evidence is especially troubling because the primary issue in dispute was whether

Gray intended to drive into the officer or if he accidently collided with him. Because of this risk of prejudice, I believe that the district court's abuse of discretion was not harmless. Thus, it is a reversible error.

I also believe that the district court's admission of the State's expert's testimony about Gray's past marijuana use is troubling. I disagree with the majority's reasoning that this testimony was harmless because it was tangential to the issues discussed by the State's expert witness. Though the State presented no evidence that Gray was under the influence of any illicit drugs at the time of the incident, any testimony about his past marijuana use may have caused the jury to speculate about whether he was under the influence of marijuana at the time of the incident. By allowing prior drug use testimony without a limiting instruction, the district court may have allowed the jury to punish Gray for his prior marijuana use or to consider it as propensity evidence to establish guilt in the present case. Thus, the discussion of Gray's past marijuana consumption could have been unfairly prejudicial.

However, I reluctantly must conclude that, although an abuse of discretion, the error was harmless inasmuch as the objected-to testimony about Gray's past marijuana use was simply cumulative to the *un*objected-to testimony about his past drug use. When the State cross-examined Gray's expert about this issue, Gray failed to object. As the majority correctly notes, the admission of the *un*objected-to testimony about Gray's prior marijuana use was not plain error because it could be relevant to his mental health. *See Mitchell v. State*, 124 Nev. 807, 817-18, 192 P.3d 721, 727-28 (2008) (holding that the admission of relevant prior bad act evidence after the defendant has put his character at issue is not plain error). Since the State's expert's testimony about Gray's past

marijuana use was similar to Gray's expert's testimony about this issue, the improper admission of the State's expert's testimony did not present any new issues for the jury. Thus, given the fact that this was essentially the same as the unobjected-to testimony, the abuse of discretion was likely harmless.

Though the district court's abuse of discretion in admitting the State's expert's testimony about Gray's marijuana use was harmless, its abuse of discretion in failing to admonish the jury to disregard the inadmissible testimony about Gray's prior arrests and convictions was not harmless. I would therefore reverse Gray's conviction and remand this case for a new trial.

_____, J.
Saitta