PHILIP ALEXANDER TOMARCHIO, Jr., Appellant, *v.* THE STATE OF NEVADA, Respondent.

No. 12796

June 27, 1983                                665 P.2d 804

*Fitzgibbons & Beatty,* Las Vegas, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Robert Miller,* District Attorney, and *James Tufteland* and *Thomas R. Green,* Deputy District Attorneys, Clark County, for Respondent.

## OPINION

*Per Curiam:*
Appellant Philip Alexander Tomarchio, Jr. was convicted of

first-degree murder after a jury trial, and sentenced to life imprisonment without the possibility of parole. The district court erred, however, in finding that appellant did not request an attorney prior to being questioned by police, and in applying an erroneous standard of review in determining whether appellant's confession was voluntary. Further, the prosecution improperly attempted to impeach a key defense witness with an undocumented prior conviction. As we find the evidence of appellant's guilt overwhelming, we decline to reverse his first-degree murder conviction. However, we believe the asserted errors prejudiced appellant during the penalty phase of his trial. Accordingly, we affirm appellant's conviction, but remand the case for a new penalty hearing.

Appellant's involvement in the crime which resulted in this appeal does not appear to be in dispute. In opening argument at trial, defense counsel conceded that appellant shot and killed Corrections Officer James Harbin in the course of an attempted armed robbery in Las Vegas.

## APPELLANT'S CONFESSION

Appellant argues the district court erred in denying a motion to suppress a confession and physical evidence obtained as the fruits of that confession. This issue arises out of the following series of events. The day after the murder, appellant and his "common law wife," Kathleen Reavy, were taken into custody by Las Vegas police. At the time of his arrest, appellant was advised of his *Miranda* rights and informed he was to be charged with murder. Appellant responded, "Well, I better have a lawyer if I'm going to be charged with murder." Detective McGuckin, the arresting officer, later testified at an evidence suppression hearing that at that time he interpreted appellant's response as "to the effect that he didn't want to speak to me until he spoke with an attorney." The detective noted the apparent refusal on a "rights card" he used to read appellant his rights; the notation on the card read, "REFUSES TO MAKE STATEMENT W/O PRESENCE OF AN ATTY."

Appellant was subsequently transported to the Las Vegas jail. Later that evening, appellant asked a police officer if Reavy was going to be arrested. The officer declined to answer, and told appellant he would have to speak to Detective McGuckin. At appellant's request, the detective met with appellant the next morning. At this meeting, McGuckin again advised appellant of his *Miranda* rights, and a discussion ensued between appellant and the detective concerning whether Kathleen Reavy was to be arrested and charged with murder. What transpired in the course of this discussion is disputed.

Appellant testified, and the district court found, that when appellant sought to bargain for Reavy's release in return for his confession, McGuckin picked up a telephone and said to someone at the other end, "Order Kathleen Reavy's release." Appellant, who was unaware that Reavy had been released the night before, claimed to have been deceived by this ruse. He eventually made a complete videotaped confession, which led to the recovery of the murder weapon and related physical evidence.

Appellant sought to suppress the confession and physical evidence on the grounds that the detective's ruse violated his Fifth Amendment rights. The district court denied the motion, finding that appellant had not requested an attorney and that, under a "totality of the circumstances" test, appellant's confession was voluntary. In so doing, we believe the district court erred.

Initially, we take issue with the district court's finding that appellant did not request an attorney prior to being questioned by police. Such a determination is a finding of fact, which should not be disturbed on appeal if supported by stubstantial evidence. *See* Brimmage v. State, 93 Nev. 434, 567 P.2d 54 (1977); Scott v. State, 92 Nev. 552, 554 P.2d 735 (1976). In the instant case, however, our review of the record indicates that the district court's finding is not supported by substantial evidence. When initially questioned, appellant clearly indicated he did not wish to speak with police until he had spoken to an attorney. The arresting officer testified that in his opinion appellant had requested an attorney, and unambiguously noted on the rights card that appellant refused to make a statement without the presence of an attorney. Although appellant later voluntarily requested to speak with Detective McGuckin concerning the possible arrest of Reavy, given the record the conclusion that appellant initially requested counsel before questioning appears inescapable.

As appellant initially requested counsel, the issue becomes whether the district court applied the correct standard of review in determining whether appellant's confession was voluntary. The district court applied a "totality of the circumstances" test, citing Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041 (1973), and under this standard concluded that appellant's confession was voluntary.

The "totality of the circumstances" test may be relevant to a discussion of whether a defendant's confession is voluntary

under due process standards. *See* Mincey v. Arizona, 437 U.S. 385, 401, 98 S.Ct. 2408 (1978); Davis v. North Carolina, 384 U.S. 737, 741-742, 86 S.Ct. 1761 (1966). The "totality of the circumstances" test, however, is not applicable in analyzing whether a defendant has relinquished his Fifth Amendment rights against self-incrimination. *See* Edwards v. Arizona, 451 U.S. 477, 483, 101 S.Ct. 1880 (1981).[1] Instead, in that the purported waiver of a constitutional right is ineffective unless knowingly and intelligently made, the alleged waiver of *Miranda* rights must be judged under a "knowing and intelligent waiver" standard. *See* Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602 (1966). The application of this higher standard of review may result in the exclusion of some confessions which might have been voluntary under the lesser, "totality of the circumstances" test. *See* Michigan v. Mosley, 423 U.S. 96, 114, 96 S.Ct. 321 (1975) (Brennan, J., dissenting).

As appellant initially requested counsel, the district court erred in applying a "totality of the circumstances" test in determining whether appellant knowingly and intelligently waived his rights. Further, although the State urges the district court nonetheless applied the correct standard of review because appellant "voluntarily" contacted Detective McGuckin to discuss the possible prosecution of Reavy, we do not believe that this, standing alone, is sufficient to show that appellant was outside the protections afforded by *Miranda*. While the requirements of *Miranda* governing custodial interrogation do not apply to volunteered utterances (*see* Varner v. State, 97 Nev. 486, 487-488, 634 P.2d 1205 (1981); Ludwig v. State, 97 Nev. 445, 447-448, 634 P.2d 664 (1981)), in the instant case the district court found that Detective McGuckin had engaged in an elaborate "deception" by picking up the telephone and ordering the release of an individual the detective knew was not in custody at the time. The district court also found that the detective engaged in this charade in order to obtain appellant's confession. In that the detective intended this conduct to elicit incriminating remarks from appellant, McGuckin's conduct amounted to an interrogation. *See* Rhode Island v. Innis, 446 U.S 291, 100 S.Ct. 1686 (1980). As this

---

[1] In any event, we note that *Schneckloth v. Bustamonte* is a search and seizure case which articulated the appropriate standard of review used to determine whether a defendant consented to a Fourth Amendment search. Thus, that holding is of little relevance to an analysis of whether a confession was voluntary under the Fifth Amendment. *Compare* Schneckloth v. Bustamonte, 412 U.S. at 246 *with* Edwards v. Arizona, 451 U.S. at 483-484.

interrogation was conducted after appellant had asserted a right to counsel, the purported waiver of his *Miranda* rights and the admissibility of his confession must be evaluated under the "knowing and intelligent waiver" standard. *See* Edwards v. Arizona, 451 U.S. at 486, n. 9.

Thus, the district court erred in admitting appellant's confession and related physical evidence without determining whether appellant knowingly and intelligently waived his *Miranda* rights.

## IMPROPER IMPEACHMENT

The second major issue presented concerns the prosecution's attempt to impeach a defense witness with a purported prior felony conviction. At trial, Kathleen Reavy testified at some length regarding the impoverished circumstances in which she and appellant lived, his Vietnam combat experiences, and appellant's considerable medical and psychological difficulties. Reavy also testified that appellant suffered blackouts and losses of memory, and that he had been hysterical and crying after the shooting. Reavy apparently had a considerable effect on the jury; at least one juror was sobbing or crying during her testimony.

When Reavy was cross-examined by the State, the prosecution attempted to impeach Reavy with a prior felony conviction. The prosecutor asked Reavy if she had ever been convicted of a felony; when Reavy answered in the negative, the prosecutor continued by asking if Reavy had ever been convicted of a felony in Philadelphia. Again, Reavy answered in the negative.

The prosecution's inquiries were apparently prompted by a written statement by Reavy in which she referred to having been arrested and placed on probation for selling hashish. At the time the questions were asked, however, the prosecution had no documentation of her conviction. Further, the prosecution did not know and apparently made no effort before trial to ascertain whether the conviction at issue was a misdemeanor or a felony.

The prosecution's attempt to impeach Reavy was clearly improper. The credibility of a witness may be attacked with evidence that he has been convicted of a crime, but only if the crime was punishable by death or imprisonment for more than one year under the law under which he was convicted. *See* NRS 50.095(1). This court has noted that it will not condone the use of cross-examination as a subterfuge to blacken a witness's

character by insinuating criminal convictions which cannot be proven. Jones v. State, 93 Nev. 287, 289, 564 P.2d 605 (1977). It is improper for the prosecution to ask a question about a prior felony conviction if it is unprepared to prove such a conviction in the event of denial. *See* Revuelta v. State, 86 Nev. 224, 226, 467 P.2d 105 (1970). The usual and proper manner of establishing a prior conviction is to ask the witness if he had been theretofore convicted of a felony, and if he denies the conviction, to produce a copy of the judgment of conviction. *See* Fairman v. State, 83 Nev. 287, 289, 429 P.2d 63 (1967).

In the instant case the State concedes that the prosecution did not have the necessary documentation, and that absent this documentation the attempt to impeach Reavy was improper. The State argues, however, that whatever prejudice was incurred was harmless given the overwhelming evidence against appellant. We do not agree. This court has previously noted that we consider suspect convictions obtained through trials involving such prosecutorial tactics, and where "a prosecutor in this state asks such a question and is not prepared to document the conviction, we shall review the point with great care." Revuelta v. State, 86 Nev. at 227-228. In that appellant conceded at the outset of trial that he shot the victim, the real issues presented at trial were whether appellant was guilty of first or second-degree murder and the appropriate penalty. After Reavy's testimony, which apparently had a substantial impact on the jury, the prosecution attempted to do exactly what this court has held impermissible: blacken Reavy's character by insinuating a criminal conviction which could not be proven.[2]

Given Reavy's close association with appellant and the nature of the offense alleged, we believe there was a real danger that the jury might assume that appellant was also involved in the illegal use of controlled substances. Thus, the prosecution probably managed to blacken both Reavy's and appellant's characters at the same time.

As previously discussed, the district court erred in admitting appellant's confession and related physical evidence without determining whether appellant knowingly and intelligently waived his *Miranda* rights. In light of the overwhelming evidence establishing appellant's involvement in the shooting, however, we believe the asserted errors were harmless beyond a

---

[2]When questioned by the district court judge, the prosecutor justified his actions on the grounds that the jury appeared to be empathetic to Reavy, and "when a juror takes empathy with a witness, then it becomes my job to get a little bit meaner than I would have normally. . . ."

reasonable doubt as to the question of appellant's guilt. Several eye witnesses testified that appellant shot the victim at point-blank range, and appellant conceded at trial that he shot the victim. Given the weight and character of this evidence, we believe the addition of appellant's confession contributed little if anything to the jury's finding as to guilt. At the same time, we are not convinced that the prosecution's improper attempt to impeach Reavy did not affect the penalty phase of the trial. In light of the circumstances and the record, we believe that, were it not for the prosecution's improper impeachment, it is possible that the jury might have brought back a sentence less than life without the possibility of parole. Accordingly, we affirm appellant's conviction of first-degree murder, but reverse and remand this case for a new penalty hearing to determine whether a lesser sentence shall be imposed.