**134 Nev., Advance Opinion 54**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

CORY DEALVONE HUBBARD,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 66185

**FILED**

AUG 02 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction pursuant to a jury verdict of conspiracy to commit robbery, burglary, seven counts of robbery with use of a deadly weapon, assault, and discharge of a firearm within a structure. Eighth Judicial District Court, Clark County; James M. Bixler, Judge.

*Reversed and remanded.*

Law Office of Patricia M. Erickson and Patricia M. Erickson, Las Vegas; Brent D. Percival, Las Vegas,
for Appellant.

Adam Paul Laxalt, Attorney General, Carson City; Steven B. Wolfson, District Attorney, Steven S. Owens and Krista D. Barrie, Chief Deputy District Attorneys, and Charles W. Thoman, Deputy District Attorney, Clark County,
for Respondent.

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, CHERRY, J.:

Appellant was convicted after a jury trial of conspiracy to commit robbery, burglary, seven counts of robbery with use of a deadly weapon, assault, and discharge of a firearm within a structure. The district court admitted evidence at trial concerning appellant's prior residential burglary conviction to prove intent and absence of mistake under NRS 48.045(2). In this appeal, we decide whether the defense must place intent or absence of mistake at issue before prior act evidence may be admitted.

We conclude that the defense need not place intent or absence of mistake at issue before the State may seek admission of prior act evidence if the evidence is relevant to prove an element of the offense such as intent for the specific intent crime of burglary. Regardless, the evidence may still be inadmissible if it is not relevant or its probative value is substantially outweighed by the risk of unfair prejudice. Where, as here, the evidence left little doubt as to the assailants' intent to commit a felony at the time of entering the home, and appellant's defense was not based on a claimed lack of intent or on mistake, but rather on a claim that he was not present and had no involvement in the crime, the evidence of his prior residential burglary conviction had little relevance or probative value as to his intent or absence of mistake when compared to the danger of unfair prejudice resulting from its propensity inference. Therefore, the district court manifestly abused its discretion in admitting evidence of the prior conviction, and because the error was not harmless, we reverse the judgment of conviction and remand for further proceedings.

 

## BACKGROUND

On the evening of August 22, 2013, several people were present at a residence located at 657 Shirehampton Drive in Las Vegas, including David Powers, Darny Van, Matthew Van, Thavin Van, Trinity Van, Asia Van, Kenneth Flenory ("KJ"), and Anthony Roberts. When the doorbell rang at about 8:45 p.m., Darny answered the door and a man asked for someone by the name of "Darnell," and then two other men along with the first barged their way into the house. The men were alleged to be appellant Cory Dealvone Hubbard, Willie Carter, and Stelman Joseph. One of the men pointed a gun at Darny's face, took an iPhone and iPad from Asia's hands, and pointed the gun at Thavin and Trinity. One of the men also pointed a gun at Matthew, but Matthew escaped out a back door. When KJ ran for the front door, one of the assailants, alleged to be Hubbard, pursued and tackled him, and took his cell phone. David, who was in a bedroom upstairs, grabbed a gun and ran toward the staircase as the assailant alleged to be Hubbard was coming up with a gun in his hand, and David fired two or three times, hitting the assailant in the left shoulder. One of the other two assailants shot at David, and all three assailants fled the residence.

At about 9 p.m. the same night, Hubbard entered a Short Line Express Market located about four miles from the residence. He had blood on his shirt and he had been shot in his left shoulder. In his statement to the police, Hubbard indicated that he was randomly shot while walking down the street. The surveillance videos from the market did not show any vehicles dropping off a person that matched Hubbard's description. Except for KJ, none of the victims could positively identify Hubbard as one of the assailants based on a photo lineup. KJ was certain to an eight on a scale of one to ten that Hubbard was one of the assailants.

Hubbard was indicted, along with Carter and Joseph, on several charges stemming from the armed robbery of the residence and several of its occupants. The indictment charged Hubbard, in relevant part, with burglary while in possession of a firearm when he did willfully, unlawfully, and feloniously enter the residence "while in possession of one or more firearms, with intent to commit a Larceny and/or any felony, and/or Robbery."

The State filed a pretrial motion in limine to admit evidence of Hubbard's prior conviction for a residential burglary that occurred in the state of Washington on July 27, 2012, attaching the judgment of conviction and a police report. The State argued the evidence was admissible under NRS 48.045(2) to prove motive, intent, identity, and absence of mistake and to rebut a claim that Hubbard was an innocent victim of an unrelated, random drive-by shooting. Although the majority of the State's analysis focused on identity, the State did argue as to intent specifically that the prior conviction was relevant to prove that, at the time Hubbard entered the residence, he intended to steal items inside. The State also argued that the 2012 burglary conviction made it more likely that Hubbard was participating in a burglary when he was shot as opposed to being the victim of a random shooting. Hubbard did not file a written opposition, but he did object at the hearing based on significant differences between the two cases (the earlier one was a generic residential burglary and did not involve guns or holding anyone at gunpoint) and the danger of undue prejudice. At the hearing, the district court orally granted the motion to prove absence of mistake, motive, and intent because Hubbard claimed he was not involved in the robbery, but the court indicated it would continue to oversee how the

evidence was presented in order to minimize the potential for undue prejudice. The district court did not enter a written order as to its ruling.

At trial, all but one of the victims in the residence testified, as did Carter, who pleaded guilty to robbery with a deadly weapon and attempted murder but denied that Hubbard was involved in the crime. Testimony from a crime scene analyst and a forensic scientist indicated that none of Hubbard's DNA or fingerprints were found in the residence.

The victim of the 2012 burglary, Kimberly Davis, also testified during the State's case-in-chief. Before this testimony, the district court gave the jury a limiting instruction that the evidence may not be considered to prove that Hubbard "is a person of bad character or to prove he has a disposition to commit crimes" but may be considered "only for the limited purpose of proving the defendant's intent and/or motive to commit the crimes alleged or the absence of mistake or accident." Thereafter, Davis testified that she was home alone in the house she shared with her parents when the doorbell rang and she observed a Hispanic male standing on her front porch and a white car on the street. He repeatedly rang the doorbell, but she did not answer, and the man left. She saw the car return, heard the doorbell ring again, and then heard footsteps in the gravel outside her window. Davis locked herself in the bathroom, she heard people come into the house and male voices in the bedroom, and someone attempted to force open the bathroom door without success. After the intruders left, Davis discovered jewelry and other items missing from the home. Davis never actually saw any individuals in her home.

Hubbard was the only witness to testify in his defense. He testified that he was shot during an unrelated drug deal that had been arranged by Joseph. Hubbard testified that he drove to a parking lot near

the Short Line Express Market and a person with the drugs entered the vehicle, and while Hubbard was inspecting the merchandise, another person came to the driver side window and shot him in the left shoulder. Hubbard ran away and ended up at the market. Hubbard testified that he had never been inside the residence where the robbery occurred, he did not know any of the victims present on that evening, and he denied any involvement in the robbery. On cross-examination, Hubbard admitted that he had been convicted of the 2012 burglary and had sustained three other felony convictions.

During closing argument, the State referenced the 2012 burglary conviction and stated that it could not be considered to prove Hubbard has a disposition to commit crimes but could be used to prove his intent as to the burglary and to prove that Hubbard was not shot mistakenly or accidentally while walking down the street. Hubbard was convicted of the burglary, as well as conspiracy to commit robbery, seven counts of robbery with use of a deadly weapon, assault, and discharge of a firearm within a structure. Hubbard was adjudicated a habitual criminal and sentenced to serve 10 concurrent life sentences without the possibility of parole, and credit for time served on the assault conviction.

Hubbard appealed from the judgment of conviction, and we transferred the case to the court of appeals. *See* NRAP 17(b). The court of appeals concluded that the district court manifestly abused its discretion in admitting testimony of the 2012 burglary because it was not relevant for any of the State's proffered nonpropensity uses and the marginal probative value of the evidence was substantially outweighed by the danger of unfair prejudice. In particular, the court concluded that Hubbard's defense that he was not present and was shot at random did not place at issue his intent

or raise any question about his mistake as to any material fact of the crimes charged. The court of appeals further concluded that the evidence against Hubbard was not overwhelming and the error in admitting the evidence was not harmless, and the court reversed the judgment of conviction and remanded the matter to the district court for further proceedings.[1] We granted the State's petition for review under NRAP 40B and directed supplemental briefing on the limited issue of whether the district court abused its discretion in admitting the prior bad act evidence because the defense did not put intent or absence of mistake at issue.

## DISCUSSION

### I. Admission of the 2012 burglary conviction

Evidence of other crimes, wrongs, or acts is not admissible to prove a person's character and show the person acted in conformity therewith, but may be admissible "as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." NRS 48.045(2). "A presumption of inadmissibility attaches to all prior bad act evidence." *Ledbetter v. State*, 122 Nev. 252, 259, 129 P.3d 671, 677 (2006) (quoting *Rosky v. State*, 121 Nev. 184, 195, 111 P.3d 690, 697 (2005)). To overcome the presumption of inadmissibility, the prosecution must demonstrate that: "(1) the prior bad act is relevant to the crime charged and for a purpose other than proving the defendant's propensity, (2) the act is proven by clear and convincing evidence, and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *Bigpond v. State*, 128 Nev. 108, 117, 270 P.3d 1244, 1250 (2012). The

---

[1]The court of appeals also concluded that three of the robbery convictions were not supported by sufficient evidence, but we did not grant review as to that portion of the decision.

 

decision of whether to admit or exclude such evidence is within the district court's discretion and will not be overturned absent a manifest abuse of that discretion. *Rhymes v. State*, 121 Nev. 17, 21-22, 107 P.3d 1278, 1281 (2005).

"Identification of an at-issue, nonpropensity purpose for admitting prior-bad-act evidence is a necessary first step of any NRS 48.045(2) analysis." *Newman v. State*, 129 Nev. 222, 231, 298 P.3d 1171, 1178 (2013) (citing *United States v. Miller*, 673 F.3d 688, 697 (7th Cir. 2012)). Because the issue on which we accepted review and directed supplemental briefing in this case pertains to intent and absence of mistake, we discuss each in turn.

A. *Intent*

Hubbard contends that every crime has an element of intent, and for that reason, unless intent is raised "in substance" or is "at issue" during trial, bad act evidence is inadmissible to prove it. Thus, Hubbard argues that since he denied being present at the residence that evening and asserted that he had been shot during an unrelated incident, he implicitly or practically conceded that he acted with intent if the jury found he committed the acts inside the residence, and thus, because intent was not at issue, evidence of the 2012 burglary was irrelevant. The State argues that intent is automatically at issue in specific intent crimes and it is not necessary for the defense to contest intent before the prosecution may address it.

Our prior caselaw does not clearly address the admissibility of prior act evidence to prove intent for a specific intent crime, particularly where the defendant denies involvement in the crime. In *Wallin v. State*, this court held that prior bad act evidence was admissible where the defense placed intent at issue, but the case involved a prosecution for battery, a

general intent crime. 93 Nev. 10, 11, 558 P.2d 1143, 1143-44 (1977); *see* NRS 200.481 (defining battery). Additionally, in *Ford v. State*, this court upheld the district court's decision to admit the defendant's five prior acts of burglary to prove the defendant's intent and/or absence of mistake when he broke into the victim's residence. 122 Nev. 796, 806, 138 P.3d 500, 506-07 (2006). It is not clear from the *Ford* opinion, however, whether the defense theory at trial was that the defendant was not present and did not commit the crime, *id.* at 800, 138 P.3d at 503 ("Throughout the interview, Ford was handcuffed to a table and maintained that he was not in the neighborhood where [the victim] was murdered that day."), or whether the defense theory was mistake/lack of intent, *id.* at 799, 138 P.3d at 502 ("When [the victim] asked Ford why he was breaking into the house, Ford professed that he was only trying to use the restroom.").

The prosecution has the burden to prove all elements of the charged offenses, and prior bad act evidence may be probative of an essential element of the criminal offense. *See Estelle v. McGuire*, 502 U.S. 62, 69 (1991). Moreover, "the prosecution's burden to prove every element of the crime is not relieved by a defendant's tactical decision not to contest an essential element of the offense." *Id.* Some federal circuit courts hold that when a defendant is charged with a specific intent crime, intent is an issue in the case regardless of whether the defendant had made it an issue, thereby permitting other acts evidence to prove intent. *See, e.g., United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994) (holding that when the crime charged requires specific intent as an element, the prosecution may use other acts evidence "to prove that the defendant acted with the specific intent notwithstanding any defense the defendant might raise"). Other courts hold that when the defendant claims not to have engaged in

SUPREME COURT
OF
NEVADA

(O) 1947A

9

the acts at all, evidence of prior bad acts may be inadmissible to prove intent. *See, e.g., United States v. Jemal*, 26 F.3d 1267, 1273 (3d Cir. 1994) ("[W]here a defendant has claimed that he did not distribute drugs at all rather than claiming that he distributed a substance that turned out to be drugs without knowledge that the substance was drugs, the Second Circuit has precluded the admission of prior crime evidence."); *People v. Clark*, 35 N.E.3d 1060, 1067-68 (Ill. App. Ct. 2015) (holding evidence that the defendant had stolen a bicycle previously was inadmissible to show intent because intent was not a contested issue where the eyewitness evidence left no doubt that the perpetrator intended to steal the bicycle and the defendant did not claim a lack of intent to steal (such as negligence or recklessness in taking the bicycle) but that he was not the perpetrator at all).

We are persuaded by an alternative approach taken in *United States v. Gomez*, in which the United States Court of Appeals for the Seventh Circuit held that although intent is at issue in specific intent crimes, the rule is not one of automatic admission. 763 F.3d 845, 858-59 (7th Cir. 2014). In *Gomez*, the court explained that for general intent crimes, the defendant's intent can be inferred from the act itself, so intent is not necessarily at issue and "other-act evidence is not admissible to show intent *unless* the defendant puts intent 'at issue' beyond a general denial of guilt." *Id.* at 858 ("[U]nless the government has reason to believe that the defense will raise intent as an issue, evidence of other acts directed toward this issue should not be used in the government's case-in-chief and should not be admitted until the defendant raises the issue." (quoting *United States v. Shackleford*, 738 F.2d 776, 781 (7th Cir. 1984), *overruled on other grounds by Huddleston v. United States*, 485 U.S. 681 (1988))). But for specific intent

crimes, intent is automatically at issue as a material element to be proven by the government, and evidence of other acts may be admissible to prove intent. *Gomez*, 763 F.3d at 858. The court cautioned that the rule is not one of automatic admission; other-act evidence offered to prove intent "can still be completely irrelevant to that issue, or relevant only in an impermissible way." *Id.* at 859 (internal quotation marks omitted). In other words, the other-act evidence "must be relevant without relying on a propensity inference, and its probative value must not be substantially outweighed by the risk of unfair prejudice." *Id.* Furthermore, the degree to which the issue is actually contested may affect the probative value of the other-act evidence. *Id.*

Here, the State charged Hubbard with burglary while in possession of a firearm when he willfully, unlawfully, and feloniously entered the residence while possessing a firearm with the intent to commit a larceny, felony, and/or robbery. The prosecution had the burden of proving a specific intent upon entering the residence. *See* NRS 205.060(1); *Stowe v. State*, 109 Nev. 743, 745, 857 P.2d 15, 17 (1993) (discussing the specific intent required for burglary). Under the facts of this case, however, we conclude that evidence of the 2012 burglary had little relevance to the issue of intent. *See* NRS 48.015 (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence").

The evidence showed that three unknown men barged into the house at night and ordered the occupants about, property was taken by the men at gunpoint, shots were fired, and the three men fled the residence. This evidence left little doubt that at the time the perpetrators entered the

 

residence, they intended to commit a robbery, larceny, or other felony therein. *See* Clifford S. Fishman & Anne T. McKenna, 3 *Jones on Evidence* § 17:64 (7th ed. 2016). This is because "[w]hen a person's conduct leaves no real doubts as to the actor's intent, it is difficult to see much need or justification for similar acts on that issue. When a man walks into a store, draws a gun, and orders the store clerk to empty the cash register into a sack, surely a jury needs no additional evidence as to the man's intent. . . . [T]he only real issue is not, why did the actor do what he or she did, but is the defendant in fact the person in question." *Id.* The evidence did not suggest that the perpetrator alleged to be Hubbard entered the residence for an innocent reason and then formed the intent to commit robbery or another felony after entry. Moreover, Hubbard denied participation in the act or being present at the scene in his statements to the police and his testimony at trial. Under these facts, evidence of Hubbard's 2012 burglary had little relevance to establishing Hubbard's intent at the time he entered the residence, and the minimal probative value was substantially outweighed by the risk of unfair prejudice.

B. *Absence of mistake*

Hubbard contends that mistake is not an element of the offense and can only be at issue when the defendant raises it as a defense, such as admitting to the act but claiming a genuine mistake in the belief that the act was legal. Here, for example, mistake would have been at issue had Hubbard's defense been that he entered the home believing that he was attending a party or that he mistakenly went to the wrong home for dinner with friends. The State asserts that NRS 48.045 permits prior act evidence to prove absence of mistake or accident, and it is not necessary that the absence of mistake or accident occur on the part of the defendant. The State

argues that absence of mistake was relevant because Hubbard claimed he was not present and was shot during an unrelated incident.

For the absence of mistake or accident exception under NRS 48.045(2), we have stated that it applies when "the evidence tends to show the defendant's knowledge of a fact material to the specific crime charged," such as knowledge of the controlled nature of a substance when such knowledge is an element of the charged offense. *Cirillo v. State*, 96 Nev. 489, 492, 611 P.2d 1093, 1095 (1980); *cf. Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991) (observing that evidence that the child had previously been injured was probative on the question of the actor's intent because it showed the child's death resulted from an intentional act by someone and not from an accident regardless of whether the defendant raised the defense of accidental death at trial). Prior act evidence can also be used to rebut a defense of mistake or accident. *See Newman v. State*, 129 Nev. 222, 231, 298 P.3d 1171, 1178 (2013) (observing that proof of prior injuries or abuse may tend to disprove accidental injury, a common defense to a child abuse charge).

Thus, the absence of mistake or accident exception may be relevant to proving either the mens rea (the defendant concedes performing the act but claims to have done so mistakenly or with innocent intent) or the actus rea (the defendant concedes harm or loss but argues it resulted from an accident and not of his agency). *See* Edward J. Imwinkelried, *An Evidentiary Paradox: Defending the Character Evidence Prohibition by Upholding a Non-Character Theory of Logical Relevance, the Doctrine of Chances*, 40 U. Rich. L. Rev. 419, 422 (2006). Absence of mistake or accident is grounded in the law of probabilities. "Innocent persons sometimes accidentally become enmeshed in suspicious circumstances, but it is



objectively unlikely that will happen over and over again by random chance." *Id.* at 423.

In this case, evidence of the 2012 burglary would be relevant to proving that Hubbard entered the home with a felonious intent rather than by mistake, under some misapprehension, or as an innocent victim of the circumstances surrounding the robbery. But the State did not make that argument for admission of the evidence under this exception, and instead asserted that the evidence was relevant to prove Hubbard was the perpetrator who was shot during the robbery and did not receive the wound during some unrelated accident.[2] Used in this way, the State is essentially trying to prove that Hubbard was correctly identified as the perpetrator. *See United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996) (concluding that absence of mistake "on behalf of the government" in identifying the perpetrator is not a legitimate basis to admit other acts evidence). Thus, as with intent, the prior act had little relevance on the issue of absence of mistake or accident by Hubbard where he claims he was not present.

---

[2]To support its argument, the State cites *United States v. Woods*, 484 F.2d 127, 135 (4th Cir. 1973) (allowing evidence that nine other infants in the accused's custody had experienced 20 cyanotic episodes over a 25-year period to rebut a claim that the child victim's suffocation was accidental based on the remoteness of the possibility that so many infants would die without wrongdoing and to prove the identity of the accused as the wrongdoer), and *People v. Spector*, 128 Cal. Rptr. 3d 31, 62 (Ct. App. 2011) (holding that evidence of the defendant's prior armed assaults against women were admissible to prove the victim's death was neither an accident nor a suicide). These cases are not dispositive of this issue because they involve a mistake or accident as to the accused's criminal intent or the criminal act.

 

Given the lack of relevance that the 2012 burglary has to either intent or lack of mistake, it becomes clear that the evidence was instead being used for an impermissible propensity purpose, i.e., if Hubbard committed a burglary before, he must have done so in this case. Thus, the low probative value was substantially outweighed by the unfair prejudice, and we conclude that the district court's admission of Davis' testimony regarding the 2012 burglary for purposes of proving intent or absence of mistake was a manifest abuse of discretion.

## II. *Harmless error*

Because we conclude that the district court's decision to admit evidence of the prior conviction was a manifest abuse of discretion, any error in admitting the evidence under NRS 48.045(2) is subject to harmless error review. *Rosky v. State*, 121 Nev. 184, 198, 111 P.3d 690, 699 (2005). An error is harmless and not reversible if it did not have a substantial and injurious effect or influence in determining the jury's verdict. *Newman v. State*, 129 Nev. 222, 236, 298 P.3d 1171, 1181 (2013). The State argues that any error in admitting evidence of the prior conviction was harmless because the State could have used the prior conviction to impeach Hubbard on cross-examination and because the evidence of guilt was overwhelming. We reject both arguments.

First, when the State questioned Hubbard on cross-examination, he admitted to the 2012 Washington burglary conviction, as well as three other felony convictions. This evidence of the prior felony convictions was admissible for impeachment purposes only. NRS 50.095(1) ("For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime is admissible . . . ."). Impeachment evidence cannot be used as substantive evidence of guilt or to show

propensity. *See Harris v. State*, 106 Nev. 667, 670, 799 P.2d 1104, 1106 (1990) (holding that prior convictions could only be considered on the issue of the defendant's credibility and not substantive proof of his guilt); 81 Am. Jur. 2d Witnesses § 864 ("While it is improper to use prior convictions as substantive evidence of guilt or a defendant's propensity to commit crimes, it is permissible to use them to attack the defendant's truthfulness and credibility in his or her testimony."). In contrast, Davis' testimony regarding the 2012 burglary was admitted for a substantive purpose, to prove intent and absence of mistake under NRS 48.045, and the district court so instructed the jury. *See generally Yates v. State*, 95 Nev. 446, 449 n.2, 596 P.2d 239, 241 n.2 (1979) (discussing the difference between felony convictions used for impeachment under NRS 50.095 and prior bad acts relevant to some purpose other than character under NRS 48.045).

Additionally, the quality of the impeachment evidence was different and less prejudicial than Davis' live testimony about her experience concerning the prior burglary. *See Tomarchio v. State*, 99 Nev. 572, 578, 665 P.2d 804, 808 (1983) (noting that "[t]he usual and proper manner of establishing a prior conviction is to ask the witness if he had been theretofore convicted of a felony, and if he denies the conviction, to produce a copy of the judgment of conviction"); *cf. Jones v. State*, 101 Nev. 573, 578, 707 P.2d 1128, 1132 (1985) (observing that details of prior crimes have a greater impact on a jury than a bare record conviction). Most importantly, if the district court had excluded Davis' testimony regarding the 2012 burglary, Hubbard might have chosen not to testify. *See Robinson v. State*, 35 So. 3d 501, 507 (Miss. 2010) (holding that erroneous admission of prior bad act evidence was not harmless where the defendant was forced to take

the stand to explain the evidence, which implicated the defendant's constitutional right to refrain from testifying).

In concluding that any error in admitting the prior bad act evidence was harmless, the dissent does not address these consequential effects and what impact they may have had in determining the jury's verdict. Davis' testimony cannot be said to be harmless where it provided powerful details about the nature of an unrelated burglary in another state for which Hubbard was convicted, and given the fact that Hubbard testified in his own defense. In that regard, the dissent ignores that the introduction of evidence concerning the nature of a prior conviction similar to the substantive charges in the pending case carries a singular risk of substantial unfair prejudice that can jeopardize the defendant's right to a fair trial. *See Old Chief v. United States*, 519 U.S. 172, 180-81, 185 (1997) (explaining that such propensity evidence "generally carries a risk of unfair prejudice to the defendant" in that it may "lure a juror into a sequence of bad character reasoning" including that the prior act "rais[ed] the odds that he did the later bad act now charged"). As recognized in *Old Chief*, "'[a]lthough "propensity evidence" is relevant, the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect that outweighs ordinary relevance.'" *Id.* at 181 (quoting *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982)). Thus, we cannot conclude that the use of impeachment evidence rendered harmless the erroneous admission of Davis' testimony.

Second, the evidence of guilt was not overwhelming. In concluding otherwise, the dissent focuses only on the significance of certain circumstantial evidence without addressing weaknesses in the State's case,

SUPREME COURT
OF
NEVADA

(O) 1947A

17

including other evidence supporting Hubbard's defense, and whether it can be said with assurance that, without stripping the erroneously admitted prior bad act evidence from the whole, the jury's verdict was not substantially influenced by the error. *Kotteakos v. United States*, 328 U.S. 750, 765 (1946) ("The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence."); *see Fields v. State*, 125 Nev. 776, 784, 220 P.3d 724, 729 (2009) (observing that the standard set forth in *Kotteakos* applies in reviewing nonconstitutional error, under which a conviction must be reversed unless the court is convinced that the defendant suffered no prejudice as a result of the error). On this record, we are not convinced that the prior bad act evidence did not influence the jury's assessment of evidence favorable to Hubbard's defense. None of the victims could identify Hubbard at trial or in a photo lineup, aside from KJ who was only 80 percent certain on the photo lineup. Carter pleaded guilty and testified that he did not know Hubbard and he did not identify Hubbard as being present at the residence during the robbery. None of Hubbard's DNA or fingerprints were found in the residence. Moreover, even though the market was four miles from the residence and Hubbard appeared there only ten minutes after the robbery, none of the market surveillance cameras recorded a vehicle dropping him off. Hubbard explained that he had called Joseph because they were friends, that Joseph had arranged the drug deal but he never showed up, and that Hubbard was not initially forthcoming with the police about his injury

because of his previous negative experiences with the police. We, therefore, cannot say with any confidence that the error in admitting evidence of the prior burglary conviction was harmless. *See Rosky*, 121 Nev. at 198, 111 P.3d at 699.

For the reasons set forth above, we reverse the judgment of conviction and remand for further proceedings consistent with this opinion.

_____, J.
Cherry

We concur:

_____, C.J.
Douglas

_____, J.
Gibbons

_____, J.
Parraguirre

_____, J.
Stiglich

 

HARDESTY, J., with whom PICKERING, J., agrees, concurring in part and dissenting in part:

I agree with the majority's adoption of the reasoning in *United States v. Gomez*, that intent is automatically at issue for specific intent crimes because it is an element of the offense and relevant evidence of other acts may be admissible to prove intent without the defendant placing intent "at issue." 763 F.3d 845, 858-59 (7th Cir. 2014). However, I do not agree that the district judge manifestly abused his discretion by admitting evidence of the 2012 burglary on the issue of Hubbard's intent to commit the burglary in 2013 as charged. *See Diomampo v. State*, 124 Nev. 414, 429-30, 185 P.3d 1031, 1041 (2008) (stating that "[t]he trial court's determination to admit or exclude evidence of prior bad acts is a decision within its discretionary authority and is to be given great deference" (alteration in original) (internal quotation marks omitted)); *Rhymes v. State*, 121 Nev. 17, 21-22, 107 P.3d 1278, 1281 (2005) (explaining that reversal for admission of prior bad acts is warranted only upon "a showing that the decision is manifestly incorrect").

But, even if the district court erred in admitting the bad acts evidence here, the error was harmless. An error is harmless and not reversible if it did not have "a substantial and injurious effect or influence in determining the jury's verdict." *Newman v. State*, 129 Nev. 222, 236, 298 P.3d 1171, 1181 (2013) (internal quotation marks omitted). Contrary to the majority's analysis, I view the circumstantial evidence of Hubbard's guilt as overwhelming. *See Wilkins v. State*, 96 Nev. 367, 374, 609 P.2d 309, 313 (1980) (stating that circumstantial evidence alone can uphold a conviction).

Hubbard admitted that he drove to Las Vegas in a red Chevy Impala. An hour before the robbery, the surveillance photos from the

Rhodes Ranch gated community show Hubbard arriving at the Rhodes Ranch gate at 7:53 p.m. in a red Chevy Impala. Hubbard called Joseph at his number while at the Rhodes Ranch gate at 7:54 p.m. and again at 7:58 p.m. Joseph resided within the Rhodes Ranch community.

At 8:43 p.m., the victim's neighbor's surveillance video showed a dark colored SUV, later identified as belonging to Joseph, pulling up and three men barging into the front door of the victim's house. The victims testified that the men robbed them at gunpoint. KJ identified Hubbard to an 80-percent certainty as one of the assailants. Other family members identified one of the men as the darker, thicker, broader, and heavier black male, which matched Hubbard's description. That man ran up the stairs after entering the residence. David, who was upstairs, fired his gun at the man when he reached the top of the stairs and hit him in the left shoulder. After the shots were fired, the three men began to flee the residence. David was able to identify Joseph as one of the perpetrators. At the end of the neighbor's video, Hubbard and Joseph are shown running back to the SUV and driving away. It then shows a flash where Carter shot into the house and ran away on foot.

David called 911 at 8:51 p.m. to report the robbery. Five minutes later, at 8:56 p.m., Joseph called 911, from the number 702-236-4175, to report that his friend had been shot and was at the Chevron Station at Durango and Windmill. Also at 8:56 p.m., the cell phone pings from that number showed that Joseph was traveling northbound on Durango near Windmill where the Short Line Express was located.

Shortly after, Hubbard stumbled into the Short Line Express at 8096 South Durango, which is approximately 4 miles and 7 minutes from



657 Shirehampton Drive—the victim's address. Hubbard had a gunshot wound in the left shoulder. At 8:58 p.m., the cashier at Short Line Express called 911 to report Hubbard's gunshot wound. Hubbard refused to tell the 911 operator, the paramedics, the police officers, and the detectives how he was shot. The surveillance video at Rhodes Ranch showed a SUV matching the description of the vehicle used in the robbery entering Rhodes Ranch on 8:59 p.m.

Hubbard was arrested the night of the crime. Upon being booked at the Clark County Detention Center, Hubbard called Joseph at 702-236-4175, which is the same number that Joseph used to make the 911 call. Hubbard attempted to call Joseph a total of seven times at that number while Hubbard was in jail. He also called three of the same numbers that appeared on Joseph's phone records.

In resolving an appeal from a criminal conviction, we must view the evidence in the light most favorable to the prosecution. *See Koza v. State*, 100 Nev. 245, 250, 681 P.2d 44, 47 (1984). The circumstantial evidence connecting Hubbard to the robbery was overwhelming. Because "the result would have been the same if the trial court had not admitted the [bad act] evidence," I would affirm. *Ledbetter v. State*, 122 Nev. 252, 259, 129 P.3d 671, 677 (2006) (internal quotation marks omitted).

_____, J.
Hardesty

I concur:

_____, J.
Pickering