# IN THE SUPREME COURT OF THE STATE OF NEVADA

JONATHAN ZURISDAY JARAMILLO,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 73720

FILED

MAR 29 2019

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of second-degree murder with the use of a deadly weapon. Second Judicial District Court, Washoe County; Patrick Flanagan, Judge.

Appellant Jonathan Zurisday Jaramillo admittedly shot and killed a sixteen-year-old victim, Gerardo Reyes, while the two were attending a party together. When local gang unit police officers responded to the scene of the shooting, several witnesses identified Jaramillo as the shooter and by his nickname, "Sleepy," which the officers associated with him in connection with prior gang-related interactions. Based on this information, police apprehended and ultimately arrested Jaramillo, and the State charged him with Reyes' murder. Prior to trial, Jaramillo moved the district court to exclude any gang-related evidence offered against him, particularly the various nicknames by which police initially identified him, as well as other prior bad act evidence the State sought to introduce. The trial court excluded most, but not all, of the gang-related evidence, and admitted the prior bad act evidence for the limited purpose of showing that Jaramillo did not, as he claimed, accidentally or mistakenly shoot the victim. A jury convicted Jaramillo of second-degree murder with the use of a deadly weapon. Jaramillo now challenges the trial court's admission of the gang-related evidence, specifically evidence of his nickname, and the

court's admission of prior bad act and impeachment evidence offered to show Jaramillo's familiarity with guns. Jaramillo additionally asserts a claim of prosecutorial misconduct. For the reasons set forth herein, we affirm the judgment of conviction.

*The district court did not abuse its discretion in admitting limited evidence of Jaramillo's nickname for the purpose of identification*

Jaramillo challenges the district court's admission of evidence that witnesses identified him to police by his nickname, "Sleepy." He argues this evidence was inherently prejudicial because the jury would automatically infer from the nickname that Jaramillo was involved with a gang. We are not persuaded by Jaramillo's argument that a nickname, in and of itself, will necessarily lead a jury to infer prejudicial evidence of gang activity. Assuming arguendo that the jury did make such an inference, however, it was still within the district court's discretion to admit the evidence as it was relevant to show how the police identified Jaramillo as the shooter.

"The decision to admit gang-affiliation evidence rests within the discretion of the trial court." *Butler v. State*, 120 Nev. 879, 889, 102 P.3d 71, 78 (2004). In deciding whether to admit such evidence, the court must assess whether the evidence is (1) relevant for a nonpropensity purpose, (2) proven by clear and convincing evidence, and (3) probative and not outweighed by unfair prejudice. *Id.* We held in *Butler* that a trial court did not err in admitting gang-related evidence when admitted to show a nonpropensity purpose under NRS 48.045(2), when the trial court held a pretrial hearing to assess the relevance of the evidence and evaluate its probative value, relative to its prejudicial effects, and where the court appropriately instructed the jury on the appropriate scope of the evidence before deliberations. *Id.* at 889, 102 P.3d at 78-79.

It is clear from the record that the trial court recognized the potential prejudicial effects of gang-related evidence, and excluded much of the evidence of gang activity and affiliation the State sought to introduce. Moreover, as in *Butler*, the trial court here issued a specific limiting instruction to the jury cautioning that no gang-affiliated evidence could be considered in determining Jaramillo's guilt or innocence. *See id.* at 889, 102 P.3d at 79. Accordingly, we conclude the trial court did not abuse its discretion in permitting limited evidence of Jaramillo's nickname for a nonpropensity purpose under NRS 48.045(2).

*The district court did not abuse its discretion in admitting prior bad act evidence to show an absence of mistake or accident as to the shooting*

Jaramillo next challenges the trial court's admission of witness testimony that Jaramillo discussed shooting a gun at cars driving by his house. He contends that such testimony was irrelevant because he admitted at trial that he fired guns on prior occasions, and that the testimony was overly prejudicial in that it tended only to show that Jaramillo had a violent propensity. The State counters that the testimony was relevant to show Jaramillo possessed a degree of familiarity with using firearms that would undermine his claim that he accidentally shot the victim. In light of Jaramillo's defense that the shooting was simply an accident, the district court did not abuse its discretion in admitting evidence that tended to show Jaramillo was familiar with firing guns.

NRS 48.045(2) prohibits the admission of evidence of prior bad acts to show a person's character in conformity therewith. The statute provides that such evidence may be admitted for other purposes, however, including to show knowledge or absence of mistake or accident. Interpreting NRS 48.045(2)'s "absence of mistake or accident" exception, we have held that "[a] presumption of inadmissibility attaches to all prior bad

 

act evidence," and overcoming this presumption requires the State to show (1) the evidence is relevant to the crime charged for a nonpropensity purpose, (2) the act is proven by clear and convincing evidence, and (3) the probative value of the evidence is not substantially outweighed by unfair prejudice. *Hubbard v. State*, 134 Nev., Adv. Op. 54, 422 P.3d 1260, 1264 (2018) (internal quotation marks omitted). "Prior [bad] act evidence can . . . be used to rebut a defense of mistake or accident," *id.* at 1266, and "[t]he decision of whether to admit or exclude such evidence is within the district court's discretion and will not be overturned absent a manifest abuse of that discretion," *id.* at 1264 (citing *Rhymes v. State*, 121 Nev. 17, 21-22, 107 P.3d 1278, 1281 (2005)). We afford "great deference" to a trial court's decision to admit prior bad act evidence, and we will not disturb the trial court's discretion "absent manifest error." *Bongiovi v. Sullivan*, 122 Nev. 556, 575, 138 P.3d 433, 447 (2006).

We specifically held in *Hubbard* that NRS 48.045(2)'s "absence of mistake or accident exception may be relevant to proving either the mens rea (the defendant concedes performing the act but claims to have done so mistakenly or with innocent intent) or the actus rea (the defendant concedes harm or loss but argues it resulted from an accident)." 134 Nev., Adv. Op. 54, 422 P.3d at 1266. While we concluded that the exception did not apply to permit evidence of a prior burglary conviction proffered against a defendant accused of a subsequent burglary conviction, we noted that the exception did not apply because the defendant claimed he was not even present at the scene of the crime. *Id.* Had the defendant there asserted an "accident or mistake" defense, as Jaramillo has here, and claimed, for example, that he was present by mistake, or accidentally entered the home that was burglarized, the State could have offered evidence of the prior

burglary for the purpose of showing a lack of accident or mistake in the subsequent burglary charge. *Id.*

Here, unlike the defendant in *Hubbard*, Jaramillo admitted to being present when the shooting occurred and testified during trial that he purchased the firearm used in the shooting, brought it to the party, loaded it, displayed it to his friends to show off, released the gun's safety and, in order to play a prank, pressed the loaded gun into the victim's back before the gun went off. Jaramillo testified that despite affirmatively taking each of those steps leading up to the fatal shooting, it was simply an accident that the gun went off. This is a clear instance in which NRS 48.045(2)'s "absence of mistake or accident" exception would apply permitting the admission of prior bad act evidence. Nevertheless, Jaramillo argues that, because he testified to shooting the gun at trees and mountains, away from people, the State's evidence that he discussed firing the gun at moving cars is irrelevant, because Jaramillo's testimony shows he knew how to fire a gun and the State had no reason to establish Jaramillo's knowledge. Even if we were to accept Jaramillo's proposition, it would appear the outcome would have been the same regardless of whether the testimony was admitted, because Jaramillo's own admission that he knew how to fire a gun and had fired the gun on prior occasions, could have led the jury to determine that he did not accidentally shoot the victim. We are, therefore, not persuaded that the trial court's decision to admit the evidence was an abuse of discretion.

*The district court did not abuse its discretion in admitting impeachment evidence to rebut Jaramillo's claim that he was not familiar with guns*

Jaramillo also challenges the district court's decision to admit evidence in the form of text messages between him and another person in which the two discuss firearms, including the handgun used in the shooting,

and refer to other transactions involving firearms. The State argues the text messages were admissible to impeach Jaramillo's testimony in which he discussed acquiring and using the handgun with which he shot and killed Reyes and indicated his general lack of knowledge or familiarity with firearms. We are persuaded by the State's position that the text messages were permissible to impeach Jaramillo's testimony.

Generally, "[i]t is error to allow the State to impeach a defendant's credibility with extrinsic evidence relating to a collateral matter." *Jezdik v. State*, 121 Nev. 129, 137, 110 P.3d 1058, 1063 (2005) (alteration in original) (internal quotation marks omitted). There is an exception to this general rule, however, when, as here, a criminal defendant testifies in his own defense, in which case the State may introduce extrinsic evidence specifically rebutting the testimony, so long as the evidence "squarely contradict[s]" it. *Id.* at 139, 110 P.3d at 1065. "We review a [trial] court's decision to admit or exclude evidence for an abuse of discretion." *Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008).

Jaramillo took the stand as the first witness in his own defense and testified regarding his purchase of a .25 caliber handgun he used to shoot Reyes. He also indicated he had limited experience firing guns, testifying specifically regarding the two prior occasions on which he fired the handgun used in the shooting. Jaramillo also testified that he had purchased the gun from a friend of the person with whom he exchanged the text messages that the State offered as impeachment evidence. In response to this testimony, the State offered text messages in which Jaramillo said, "the gun [yo]u guys sold me don't work," and included slang terminology referring to firearms, such as "a throw away" and "a strap." At the very least, the text message in which Jaramillo claims "[yo]u *guys* sold me,"

(O) 1947A

(emphasis added), the handgun used in the shooting squarely contradicts his testimony that he purchased the firearm from a single individual, whose name and identity he did not know. The text message clearly indicates that two or more persons were involved in the transaction, squarely contradicting Jaramillo's testimony. The text message is also "directly connected with the principal matter or issue in dispute" about which Jaramillo himself testified, i.e., acquiring the handgun, and thus, does not constitute extrinsic evidence pertaining to collateral facts. *See Lobato v. State*, 120 Nev. 512, 518, 96 P.3d 765, 770 (2004) (internal quotation marks omitted).

More broadly, the series of text messages, as a whole, indicate that Jaramillo had communicated about firearms and trafficking in firearms with others who also were familiar with guns, in a context outside of the transaction in which he purchased the handgun he used to kill Reyes. Taken in their totality, these communications show Jaramillo possessed some level of general knowledge or familiarity with guns, and how to use them, beyond what his testimony was intended to convey to the jury. Therefore, we conclude that it was not an abuse of discretion for the trial court to admit this evidence for impeachment purposes.

*The State did not engage in prosecutorial misconduct*

Jaramillo further contends that the prosecution intentionally committed misconduct by allowing a witness to make a reference during trial testimony to Jaramillo's juvenile criminal record. We determine the reference, while improper, did not amount to misconduct by the prosecution.

In reviewing a claim of prosecutorial misconduct, we determine whether the State's conduct was improper and, if so, whether the conduct warrants reversal. *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). If the prosecutor's error "is of constitutional dimension," the error

is reversible "unless the State demonstrates, beyond a reasonable doubt, that the error did not contribute to the verdict." *Id.* at 1189, 196 P.3d at 476. If the error "is not of constitutional dimension," the error is reversible only if it "substantially affects the jury's verdict." *Id.* Additionally, "inadvertent references to other criminal activity not solicited by the prosecution," but which instead "are blurted out by a witness, can be cured by the trial court's immediate admonishment to the jury to disregard the statement." *Sterling v. State,* 108 Nev. 391, 394, 834 P.2d 400, 402 (1992).

During the pretrial hearing on Jaramillo's motion to exclude gang-related and other evidence, the trial court excluded any reference to Jaramillo's prior criminal record as a juvenile. Jaramillo argues that trial testimony from a detective alluding to his prior juvenile criminal history— specifically that he was on juvenile parole at the time of the shooting— demonstrates the State intentionally circumvented the trial court's pretrial order to purposely insinuate to the jury that Jaramillo was a gang member and the shooting was motivated by gang activity. The record shows, however, that the detective's testimony was not solicited by the prosecution, amounted to a single reference to Jaramillo being on youth parole, and was made in the broader context of the detective's general explanation as to the methods police used to locate Jaramillo on the night of the shooting. The reference, which the State concedes was improper, did not primarily concern Jaramillo's criminal history, propensity for violence, or gang affiliation, but the manner in which the police located and apprehended him using a cell phone GPS tracking method. As soon as the testimony was offered, the State immediately requested a bench conference to strike the testimony and the district court offered to instruct the jury on the impropriety of the remark. Defense counsel declined the offer of a jury

instruction, apparently not wanting to draw attention to the testimony, and instead moved for a mistrial. Because the prosecution did not solicit this reference, which was clearly volunteered by the witness, and in light of the prosecution's motion to immediately strike it from the record, we cannot conclude that the prosecution intentionally engaged in improper conduct.

We note further that it is far from clear that this error substantially affected the jury's verdict. The jury heard testimony from no fewer than three eyewitnesses to the shooting, each testifying that Jaramillo embraced the victim, shot him in the back at point blank range with a handgun, and then fled the scene. The jury also heard Jaramillo testify that he took a loaded gun to the scene, released the safety, and placed it against the victim's back before the gun went off. The jury heard Jaramillo testify that he had discharged the handgun on two prior occasions and, when asked by his own counsel whether he had pulled the trigger, answer "I don't know. I don't know." We conclude the jury was provided ample evidence to support its verdict, and we will not usurp the jury's role in evaluating the weight and credibility of the evidence presented. *See Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998) ("[I]t is the jury's function, not that of the court, to assess the weight of the evidence and determine the credibility of witnesses." (alteration in original) (internal quotation marks omitted)).[1]

---

[1]Jaramillo also argues that cumulative error warrants reversal. Having considered this argument, we reject it as unpersuasive. Because only one potential error is present here, namely, the detective's single unsolicited reference to Jaramillo's youth parole, and because we are not persuaded the issue of guilt is close, given the overwhelming evidence proffered at trial in addition to the detective's testimony, we conclude there

For the reasons set forth above, we ORDER the judgment of conviction AFFIRMED.

_____ Pickering , J.
Pickering

_____ Parraguirre , J.
Parraguirre

_____ Cadish , J.
Cadish

cc:   Hon. Egan Walker, District Judge
      Justice Law Center
      Attorney General/Carson City
      Washoe County District Attorney
      Washoe District Court Clerk

---

is no cumulative error warranting reversal. *See Leonard v. State*, 114 Nev. 1196, 1216, 969 P.2d 288, 301 (1998) (holding no cumulative error where prosecutorial misconduct was not particularly egregious, there were no other materially prejudicial errors, and sufficient evidence supported the jury's finding of guilt).